### The Branch of the Bank of the State of Alabama at Montgomery v. Perdue.

1. A surety in a promissory note, which the principal had also secured by a mortgage on real estate, gave notice to the mortgagee to proceed forthwith on the mortgage, or require another surety in his stead : at the time the notice was given, the mortgaged premises were of value sufficient to pay the debt, but when sold eighteen months afterwards, they had depreciated in value, and fell short of paying it *fifty per cent.* or more—*Held,* that the surety could not, by notice, require the creditor to proceed upon the mortgage, that being a security collateral to his contract to pay; and that the creditor had his election to proceed on the note or mortgage, but might have been required to sue on the note.

THIS was a proceeding by notice and motion, at the suit of the plaintiff in error, against the defendant, in the County Court of Montgomery, to recover of him, as the surety of E. N. & S. Peirce, the amount of a promissory note for the sum of " twenty one hundred and fifty-one dollars and seventeen cents, with interest from date, under the second section of the act of June, 1837." The note is dated the 23d September, 1837, and payable on " or before the first of June, 1840."

The defendant pleaded:

1. The general issue.

2. That the defendant is a surety, and as such, gave notice to the plaintiff to foreclose a mortgage which had been executed to it, by his principals; but the plaintiff failed to proceed on its mortgage, which, at the time of the notice, was an ample security, but has since, by the depreciation of the mortgaged

premises, proved insufficient for the payment of the debt. The plaintiff joined issue on both these pleas, and the case was tried by a jury, who returned a verdict for the defendant.

On the trial, a bill of exceptions was sealed; at the instance of the plaintiff. From the bill, among other things, it appears that the defendant offered in evidence a mortgage for two tracts of land, amounting in the aggregate, to four hundred acres, executed for the purpose of securing three several promissory notes, the first payable on the first of June, 1838, the second, on the first of June, 1839, and the third is that now in controversy. The mortgage provides, that "if any or either of said notes are not punctually paid, it shall be lawful for the President of said Branch Bank, to seize and sell said property at public auction, at such time and place as he may think proper, giving ten days notice of the same, by advertisement in some newspaper published in said State, applying the proceeds of said sale to the payment of said notes, or either of them, whether the same are due or not, with all interest, damage and costs, as well of the sale, as upon the notes." It was proved, that the first note had been paid, and a judgment obtained on the second, which was still unsatisfied. To the introduction of the mortgage as evidence, the plaintiff objected, but the objection was overruled, and the mortgage read to the jury; whereupon, the plaintiff excepted.

The defendant then read as evidence, a paper, of which the following is a copy, viz :

"Alabama, Lowndes County, Oct. the 12th 1838.

" To the Cashier of the Branch of the Bank at Montgomery. Please to take notice of the notes protested for non-payment the fourth of June last, wherein E. N. & S. Peirce were principals, myself and others security, that you are notified by myself to proceed forthwith against the property mortgaged for the payment of the Bank debt, or you will not consider myself bound for any of the notes where I am security on any of their paper, or require of the above named E. N. & S. Peirce, a security in place of my name.

I am, your most obedient servant,

RILEY F. PERDUE."

Which notice it was admitted had been duly received by the Cashier of the Bank.

The defendant then proved, that the lands mortgaged, in the fall of 1838, would have sold for enough to satisfy the debt due the plaintiff, but that it was not sold under the mortgage until June, 1840, when it was then sold on a credit of one, two and three years, for thirteen hundred and fifty dollars.

The Court charged the jury, that the notice given by the defendant, to foreclose the mortgage, was sufficient to make it the duty of the plaintiff to comply with the request of the defendant, without delay; and that if in consequence of the delay of the plaintiff, the property mortgaged to it by E. N. & S. Peirce, had depreciated in value between the date of the notice, or a reasonable time thereafter, and the day when it was sold by the plaintiff, the defendant was discharged from his liability, to the extent of the depreciation, as surety in the note. To this charge, the plaintiff excepted.

Other charges were given and excepted to, but as they are not considered by this Court, it is deemed unnecessary to state them.

A judgment being rendered in favor of the defendant, the plaintiff has prosecuted a writ of error to this Court.

ELMORE, submitted an argument in writing, and HARRIS, for the plaintiff, argued the case at the bar. It was admitted to have been decided by this Court, and in New York, that a surety in a note might give a verbal notice to the creditor, to sue the principal, and that if the note could have been collected by a suit promptly brought, the surety may resist a recovery against himself, if an action was not brought in a reasonable time after notice, by showing that the principal has become insolvent. And under a statute of this State, where a *written* notice is given, to sue, and no action is brought against the principal, or surety, in a reasonable time, the surety is discharged without proof of the principal's insolvency. But the case before the Court, does not come within the common law principle whhich has been stated, nor within the influence of the statute. The mortgage is no part of the defendant's contract, nor could he, by a mere notice to foreclose, control the plaintiff's action upon it. Had he desired the benefit of it, he should have applied to a Court of Equity, (if to any tribunal,) to compel its foreclosure, or have paid the debt, and then availed

himself of it, as means of reimbersing his advance. 1 Ala. Rep. N. S. 23; 4 Johns. Chan. Rep. 132; 6 Wend. Rep. 610, 1 Story's Eq. 322, 592; 9 Porter's Rep. 792; King v. Baldwin, 17 Johns. Rep. 384.

HAYNE, for the defendant—insisted, that the principle admitted by the plaintiff's counsel to have been recognized by this Court, and in New York, would not be unwarrantably extended by applying it to the case at bar. There is no distinction between the duty to collect by suit, and the duty to collect by sale, under the mortgage. In Paine v. Packard, 13 Johns. Rep. 174, the Court said, where the creditor did an act injurious to the surety, or omitted to do an act when required, which equity, and his duty to the surety enjoined it upon him to do, and which omission was injurious to the surety, in either of these cases, the surety would be discharged. He also cited 7 Johns. Rep. 332; 13 ibid. 383 ; 17 ibid. 384 ; 6 Wend. Rep. 610; 10 ibid. 162; 13 ibid. 375; 1 Stewart's Rep. 11; 3 ibid. 9, 160; 8 Porter's Rep. 284.

COLLIER, C. J.—It has been so often decided, as to be considered the settled law of this Court, that a surety may quicken the diligence of the creditor, by requiring him to put in suit the security by which the debt is evidenced, and if upon such requisition, suit is not brought, and it appears that it might have been made available, the subsequent insolvency of the principal, is a good defence for the surety, even at law. Bruce v. Edwards, 1 Stew. Rep. 11; Herbert & Kyle v. Hobbs & Fennell, 3 Stew. Rep. 9; Goodman v. Griffin, ibid. 160; Gayle v. Randall, 4 Porter's Rep. 236; Scott v. Bradford, 5 Porter's Rep. 443; Strader v. Houghton, 9 Porter's Rep. 334. But this principle we think cannot be applied without disturbing others equally well settled, so as to authorise the surety to require the principal, by a mere notice, to proceed on any collateral security he may have for the payment of the debt. By a collateral security, we mean one in which the surety is not bound, or one which is apart from the principal or primary engagement.

Where the principal and surety make a direct promise in writing to pay money, and in addition, one or both of them execute a mortgage to the creditor, to secure a performance of

their undertaking, the creditor is not obliged to proceed upon his mortgage, but may either foreclose it, or prosecute an action at law upon the promise of the debtor and his surety. The mortgage is a mere security for the debt, and is regarded as an incident to the legal contract to pay. In Cullum v. Emanuel & Gaines, et al. 1 Ala. Rep. N. S. 23, the law is so laid down; and the Court there held, that a surety could not injoin a judgment at law, by showing that his principal had mortgaged to the creditor, property of greater value than the amount of the debt.

It has been held, that sureties are entitled to go into a Court of Equity, after a debt has become due, to compel the debtor to exonerate them from their liability, by paying the debt ; and it has been said that a surety upon the maturity of the debt, may obtain the aid of equity to compel the creditor to sue for, and collect the debt from the principal, if he will indemnify the creditor against the risk, delay and expence of the suit. 1 Story's Eq. 322 and cases cited. But this latter proposition has been questioned by some, who have maintained, that the right of the surety does not, independent of a statute, extend so far as to authorise him to compel the creditor to seek a recovery of the principal ; that his contract obliges him to pay the debt, and when he has done this, he may reimburse himself by suit.

When the surety has paid the debt of the principal, he stands in the place of the creditor, not only through the medium of contract, but even by means of securities entered into without his knowledge, having a right to have those securities transferred to him, though there was no stipulation for it ; and to avail himself of those securities against the debtor. Where the creditor has not applied such securities in discharge of the debt, he must hold them as a trustee, ready to be applied for the benefit of the surety; and if he disables himself from yielding up to the surety, the means of reimbursement, which he had, the surety will be exonerated from liability, *pro tanto ;* unless the creditor acted without a knowledge of the rights of others, and with good faith and just intentions. Cullum v. Emanuel & Gaines, et al. 1 Ala. Rep. N. S. 23.

We have thus briefly stated the rights of the surety against the creditor, and we think they lend no countenance to the de-

fence set up by the plaintiff in error. It was entirely competent to have required the Bank to have proceeded against the principal debtors; but had such a requisition have been made, no consequences favorable to the surety would have resulted, as the note which was due at the time the notice was given, has, (as we learn from the record) been paid by the principals. As for the mortgage, it was but another and indirect means of securing the payment of the notes, which we have seen, the Bank might avail itself of in the first instance, or if it so elected, it might sue upon the direct engagement to pay. The nature and extent of the sureties, contract, does not authorize him to act for the creditor, which of the two remedies he shall pursue, and consequently, a notice to proceed upon the mortgage must be unavailing as the ground-work of a legal defence.

The principle which recognizes the right of the surety to require the note or bond of the principal to be put in suit, must proceed upon the idea that the creditor impliedly undertakes to do so, upon a notice to that effect being given him. In the Manchester Iron Man. Co. v. Sweeting, 10 Wend. Rep. 162, the Court say, where the plaintiff refuses to prosecute the principal, on the request of the surety, his neglect is a virtual agreement to discharge the former, and look alone to the responsibility of the latter. But this reasoning cannot be applied to a notice to foreclose a mortgage, for that constitutes no part of the contract to pay the debt, but is merely assistant to it.

Again: the creditor cannot be injured by suing the principal to judgment even if he be insolvent, but it may be important to him in a country where real property fluctuates in value as in this, that he should choose his own time of selling under a mortgage. To this, it may perhaps be answered, that he may, if it is depressed, become its purchaser and take the chances of the market; but it might not suit him to purchase, and he should not be forced to become a purchaser against his interest.

In every view in which this case has presented itself, we are of opinion that the defence interposed in the County Court should not have been sustained; and the judgment is consequently reversed, and the cause remanded.