[Troy v. Rogers *et al.*]

# Troy *v.* Rogers *et al.*

## *Action on Attachment Bond.*

1. *Action on attachment bond*; *immaterial whether defendant in attachment had other than exempt property*—The right of maintaining an action on an attachment bond for the wrongful levy of the attachment is dependent upon whether or not there existed one of the statutory grounds upon which the writ could be obtained; and it is immaterial as to the maintenance of the suit that the defendant in attachment had no property except such as he was entitled to claim and hold as exempt from the payment of his debts.

2. *Same*; *insufficient complaint.*—In an action upon an attachment bond for the wrongful levy of a writ of attachment, a count of the complaint which bases the plaintiff's right to recover damages upon the ground that at the time of the levy he had no other property than such as was exempt under the law, which fact was known to plaintiff in attachment, states no cause of action and is bad on demurrer.

3. *Same*; *evidence as to ʾplaintiff's efforts to sell personal property and his statements admissible on the issue as to whether he was about to remove out of the State.*—In an action upon an attachment bond, where it appears that the writ of attachment was sued out on the ground that the defendant in attachment, plaintiff in pending suit, was about to remove out of the State, the testimony of the plaintiff himself as to his efforts just before the attachment was sued out, to sell certain property and furniture, and that he had stated prior to the suing out of the writ that he expected to go to another State and engage in a designated business, is admissible as evidence of his own acts and declarations against interest, tending to show a purpose on his part to remove out of the State.

4. *Same*; *same.*—In such an action the testimony of the defendant that three or four weeks before he sued out the attachment the plaintiff told him, in substance, that he was going to leave the country, that the company for which he had been working was going to reduce his salary, is admissible.

5. *Pleading and practice*; *subsequent exclusion of evidence improperly admitted cures error, and can not constitute basis of assignment of error on appeal.*—Where in the trial of a case, evidence which was admitted against the objection of plaintiff, is subsequently excluded and the jury instructed not to consider it, if there was error in the admission it is cured, and the ruling can not be made the basis of a valid assignment of error on appeal by plaintiff.

6. *Attachment*; *what necessary to constitute statutory ground of about*

*to remove out of the State.*—In order to justify the suing out of an attachment upon the ground that the defendant therein is about to remove out of the State, it is not essential that the defendant should have determined upon, or have intended to acquire, a new residence or home for himself in some other State or country; but it is only necessary that he is about to remove out of this State with no fixed intention of returning.

7. *Action upon attachment bond; damages; costs and expenses of defending attachment suit; charge to the jury.*—In an action upon an attachment bond, when the proof shows that a horse levied upon under the attachment has been awarded to the defendant in attachment, (the plaintiff in present suit), as exempt on a contest of exemptions instituted after the levy, but there was no proof of the costs and expenses to which plaintiff was subjected in defending the attachment suit, nor of how long he was deprived of the use of the horse, and while there was evidence of what was a reasonable attorney's fee for defending said suit, there was none that plaintiff had incurred such expense, paid or unpaid, a charge which instructs the jury that, in computing the damages, the plaintiff should be allowed the value of the horse, the costs and expenses incurred in defending the attachment suit, whether he had paid them or not, and also reasonable attorney's fees incurred therein, is abstract as to some of the items of damage, and is properly refused.

8. *Attachment; statement of intention as justifying issuance of writ; estoppel.*—Where prior to the suing out of a writ of attachment on the ground that the defendant in attachment was about to remove out of the State, said defendant stated to the plaintiff, in substance, that he was going to leave the country, the fact that the plaintiff, honestly believing and acting on such statement as a fact, sued out said writ upon the ground stated, does not estop the defendant in attachment from denying, in a suit upon the attachment bond for the wrongful levy of the writ, that he was about to remove out of the State; such statement lacking two of the essential elements of an estoppel, in as much as (1) it was not a representation of a material fact or state of things, actually existing or past and executed, but the mere statement of a present intention or purpose, which can not form an inducement or basis for any fixed course of action; and, (2) it was a mere casual declaration which was not made with the intention that the other party should act upon it.

9. *Action on attachment bond; belief of plaintiff in attachment as to existence of ground; charge to jury.*—In an action on an attachment bond to recover damages for the wrongful levy of the writ, a charge which instructs the jury that before they can "find a verdict for the defendant, they must find that some one of the statutory grounds for attachment existed in fact, and not in the belief of the defendant," who was plaintiff in the attachment suit, is faulty and properly refused, because it requires that the existence of the cause of attachment must not have been in the belief of the plaintiff in attachment.

10. *Same; same; same.*—Where an attachment is sued out upon the ground that the debtor named therein is about to remove out of the State, in a subsequent suit upon the attachment bond for the wrongful levy of the writ, a charge asserts a correct proposition of law and should be given, which instructs the jury that if they find from the evidence that the "plaintiff was not about to remove permanently from the State, and take up a residence in another State, then although the defendant, Rogers, honestly believed that the plaintiff was about to remove permanently from the State, and had probable cause for such belief, still he would be liable to the plaintiff, if there was no other cause for attachment."

11. *Same; judgment in attachment suit, irrelevant evidence.*—In an action upon an attachment bond to recover damages for the wrongful levy of the writ, where there is no issue made as to the fact of the indebtedness which formed the basis of the suit, the judgment recovered by the plaintiff in the attachment suit is irrelevant evidence.

APPEAL from the City Court of Birmingham.

Tried before the Hon. WILLIAM W. WILKERSON.

This was an action brought by the appellant against the appellees, who were the principal and sureties on an attachment bond in an attachment suit brought by the defendant Rogers against the plaintiff Troy.

The complaint, which was filed January 9, 1895, alleged in some of the counts that the attachment was wrongfully sued out, and in others that it was wrongfully and vexatiously sued out, and especially denied that the plaintiff was about to remove out of the State, as alleged in the affidavit for the attachment. A special claim for damages for attorney's fees incurred in defending the attachment suit and also in asserting plaintiff's exemptions, was made.

The fourth count of the complaint is as follows : "The plaintiff claims of the defendants the sum of $325, for the breach of the condition of said bond set out in the first count, which is hereby referred to and made a part of this count, for that said attachment was wrongfully and vexatiously sued out, against him, in this, that plaintiff had no property, real or personal, debts due him or choses in action, or other estate whatever, liable to execution for the payment of any debt or claim held by the said Rogers against him, that plaintiff was, and has been for many years, a citizen and resident of said State of Alabama, and had no intention to give up his residence in said State, or to remove therefrom, and the said

Rogers well knew that the plaintiff had no property or estate liable to execution for any debt held or claimed by him, and without probable cause for believing that the plaintiff was about to remove from the State, caused said attachment to be issued against this plaintiff, and levied on property which the said Rogers well knew was exempt, by the constitution and laws of the State, from levy and sale under any execution or attachment which the said Rogers was entitled to have and obtain from any court in said State, and plaintiff avers that in suing out said attachment said Rogers acted maliciously and wantonly for the purpose of vexing, annoying and injuring the plaintiff.''

To this count the defendants demurred on the following ground : ''That the fact, if it be a fact, that the attachment was levied on exempt property constitutes no breach of the bond sued on in this case.'' Said demurrer was sustained by the court. To the other counts of the complaint the defendants pleaded the general issue, and the trial was had upon issue joined on said plea.

The plaintiff introduced the bond sued on, executed by each of the defendants, and so much of the record in the attachment suit, wherein W. H. Rogers was plaintiff and R. M. Troy was defendant, as showed the institution of said suit and the affidavit made therein by Rogers on the 20th day of October, 1894, wherein he alleged that the plaintiff, Troy, was about to remove out of the State ; the issue of the attachment on the same day, the return of the sheriff dated October 22, 1894, showing a levy on the then defendant's horse, the filing by Troy of a claim of exemption in due form on the said 22d day of October, 1894, the contest thereof by Rogers, the trial of said contest and the judgment of the court adjudging that the horse was exempt, and was of the value of one hundred dollars.

There was other evidence introduced on the part of the plaintiff, tending to show that he had resided in Alabama continuously since 1887 ; and that at the time of the suing out the attachment, he had not moved away from Alabama ; had not acquired a home anywhere else than in Alabama, and had made no arrangements looking to acquiring such a home ; that upon the levy of the writ of attachment upon the horse, which was owned by the plaintiff in the present suit, he filed his claim of exemp-

tions, in which he claimed, among other things, the horse so levied upon; and that this claim of exemptions was contested by Rogers, the defendant in the present suit, and decided in this plaintiff's favor.

On the cross-examination of the plaintiff as a witness, he was asked, whether he had not, in October, 1894, tried to sell to one Welborn, his horse, rifle and furniture, and if he did not then state that he expected to go to Georgia to sell chewing gum? To this question plaintiff's attorney objected, on the ground that it was not part of the *res gestæ*; that it was not shown to have been said in connection with any act, or shown to be near the time when plaintiff did go out of the State. The court overruled the objection, and plaintiff excepted. Witness answered: That he had offered to sell the horse and rifle some time in October. Witness was then asked, if in October, 1894, when he filed his claim of exemption, he did not have an interest in a concern known as J. M. Fisher & Co., and if he did not own a watch and chain and a diamond scarf pin? To the introduction of this evidence the plaintiff objected, on the ground that the judgment on the contest was conclusive as an estoppel, and further, because the evidence was irrelevant and immaterial to any issue in the cause. The court held, that the judgment in the contest proceedings was, at least, *prima facie* conclusive, but remarked that not being positive that it was entirely effective as an estoppel, he would reserve the question, and if he afterwards concluded that it was incompetent, he would rule it out; that it appeared that the evidence was competent as tending to show a fraudulent disposition of property by the plaintiff, or a fraudulent withholding. The objection was overruled, and plaintiff then and there duly excepted. The witness, in response to the question, testified that he and Fisher were partners in a business venture, and that he invested therein $1,800, but that his interest in such business was worth nothing, and that the business concern was absolutely insolvent. The witness further testified that he owned a watch and chain worth $20, and a small diamond scarf pin, the value of which was not shown; that he owned these articles when he filed his schedule on the contest of exemptions, and that they were not included therein, nor did he include therein any interest in the business of J. M. Fisher &

Co. The plaintiff was further asked, on cross-examination as a witness, if his wife had not died in June, 1894, leaving an estate, and whether he was not entitled to a share therein, and as to the amount of his interest therein, and in this connection the record of the probate court in the matter of his wife's estate was offered in evidence by the defendants. To the introduction of this evidence the plaintiff objected, on the ground that it was immaterial and irrelevant, and that the judgment on the contest of exemptions was conclusive as an estoppel. The court, after making the same remarks to this evidence as were made in reference to the other evidence introduced, overruled the objection, and to this ruling the plaintiff duly excepted. The witness then in answer to numerous questions in reference to his wife's estate, and as to the disposition of his share therein, testified that he was entitled to one-half of said estate, and that upon final settlement his share was $512, which amount he had paid, with the exception of $132, towards the support of his children. The plaintiff offered in evidence proof of what was a reasonable attorney's fee for defending the attachment suit, and asserting his claim of exemptions.

W. H. Rogers, one of the defendants, was called as a witness in his own behalf, and testified in substance, as follows: That three or four weeks prior to October 22, 1894, he had a conversation with Troy, in which he stated, "that he was going to shake the dust of this country off his feet, that the Elyton Land Company had reduced his salary to $75 a month." To this conversation, the plaintiff objected on the ground that it was no part of the *res gestæ*, and was irrelevant and immaterial, and moved to exclude the same, which said objection and motion were overruled, and the plaintiff then and there excepted. It was shown that the amount to which plaintiff was entitled in his wife's estate, added to all the other property shown to have been owned by him, amounted to less than $1,000, and thereupon, plaintiff's counsel moved to exclude all the evidence about the investment by the plaintiff in the firm of J. M. Fisher & Co., on the ground that it was immaterial and irrelevant, but the court overruled the motion, reserving the question of the competency of the evidence, and the evidence remained before the jury until the general charge

[Troy v. Rogers *et al.*]

was made by the court. In its oral charge, the court instructed the jury that although he had allowed the proceedings in the probate court and investments by the plaintiff in J. M. Fisher & Co., and the fact that certain articles were omitted by the plaintiff from his schedule upon the claim of exemption to be testified to before the jury, he now instructed the jury that they were not to consider this matter at all and the same is now excluded. That it was shown that the property levied on under the attachment was exempt to the plaintiff, and the only question they had to consider was, whether the plaintiff was about to remove out of the State.

The proceedings before the probate court for the settlement of the said estate having been introduced in evidence, a memorandum purporting to set out the amount and value of the property owned by the plaintiff was made on the face of the claim of exemptions in the handwriting of some person unknown, and in said tabulation articles were included and values appended which were false and misleading, and the said paper containing said memorandum was allowed to be taken by the jury to their room, when they retired to make up their verdict.

Defendants offered in evidence the record of the judgment obtained by Rogers against Troy in the original action. To the introduction of this record plaintiff objected, on the ground that it was irrelevant and immaterial, which said objection was overruled by the court, and the plaintiff duly excepted. By said record it was shown that Rogers recovered a judgment against Troy for $169.30.

Defendants further showed that prior to the suing out of the attachment by Rogers he consulted an attorney as to his right to do so, and stated to his said attorney all the foregoing facts, and that he and his said attorney conversed with the witnesses before suing out the attachment, and that he was advised by said counsel that said attachment would lie. This was substantially all the evidence.

The plaintiff then requested the court to give to the jury, the following written charges, and separately excepted to the court's refusal to give each of them as asked :
(1.)  "Before the jury can find a verdict for the defendants, they must find not only that the defendant Rogers

[Troy v. Rogers *et al.*]

honestly believed that the plaintiff was going to remove permanently from the State, but that the plaintiff had determined to give up his residence in this State, and make some other place his home." (2.) "I charge you, that unless you find from the evidence that the plaintiff had, at the time of the attachment, which is the basis of this action, determined in his own mind to remove from Alabama, and make some other State or country his home, then in law he was not about to remove out of the State, and defendant Rogers had no right to sue out an attachment on that ground." (3.) "I charge you, that before you can find a verdict for the defendants, you must find that some one of the statutory grounds for attachment existed in fact, and not in the belief of the defendant Rogers." (6.) "That the fact, if it be a fact, that the plaintiff when he went beyond the border of the State left his children, the only members of his individual family in this State, may be considered by the jury as evidence of what his intention was in reference to removing from the State, and given such weight as in the opinion of the jury it is entitled to." (8.) "That before the jury can find a verdict for the defendants they must find as a fact from the evidence, that the plaintiff at the time the attachment was sued out had determined to remove from the State, and take up his residence elsewhere." (12.) "I charge you that if you find from the evidence that the plaintiff was not about to remove permanently from the State, that he did not intend to give up his residence in this State, and then take up a residence in another State, then although the defendant, Rogers, honestly believed that the plaintiff was about to remove permanently from the State, and had probable cause for such belief, still he would be liable to the plaintiff, if there was no other cause for attachment." (15.) "I charge you that if you believe from the evidence that all the personal property owned by the plaintiff at the time the attachment was sued out, was of less value than one thousand dollars, and that the said Troy owned no other property in this State, then, although you should find that he was about to remove out of the State and make his home elsewhere, you must find a verdict for the plaintiff, and award him actual damages." (16.) "The intended removal of a resident of this State, who owns personal property of less

[Troy v. Rogers *et al.*]

value than one thousand dollars and who owns no other property, although made with the purpose and intent to make his home elsewhere, does not justify an attachment against him." (17.) "That if the defendant Rogers knew, or ought to have known, that the plaintiff owned of personal property less than one thousand dollars at the time that he had the attachment, which is the foundation of this suit, issued, then the issue of said attachment was not only wrongful, but malicious and vexatious." (26.) "If the jury find from the evidence, that the attachment, which is the foundation of this suit, was wrongfully sued out, they should award to the plaintiff his actual damages suffered in consequence of such wrongful attachment, and in computing said damages, the jury should allow for the value of the horse which has been fixed at one hundred dollars, the costs and expenses which the plaintiff has been subjected to in defending the attachment suit and in having the said horse declared exempt, including his travelling and other expenses in attending court; and the jury must allow these costs whether the plaintiff has paid them or not, if he is liable therefor, and they should also allow in said computation a reasonable attorney's fee for defending said attachment suit and asserting said claim of exemption." (27.) "In estimating the damages, if the jury believe that the attachment was wrongfully sued out, but not maliciously or vexatiously sued out, they will allow the value of the horse fixed at $100, the cost and expenses to which the plaintiff was subjected in attending court, fixed at $10; the reasonable attorney's fee incurred or paid by the plaintiff in defending said attachment suit, and the amount which the plaintiff had lost by reason of being deprived of the horse seized under said attachment."

The first charge which was given at the request of the defendant is copied in the opinion, and the second charge was as follows: (2.) "It is not necessary to constitute the ground of attachment, that plaintiff was about to remove out of the State, that plaintiff should acquire a domicil, or intend to acqure a domicil, in another State." To the giving of each of these charges the plaintiff separately excepted. Upon the jury returning a verdict for the defendants, the plaintiff made a motion for a new trial, and assigned as grounds there-

[Troy v. Rogers *et al.*]

for that the verdict was contrary to the evidence, and to the law, and that the court erred in its several rulings to which exceptions were reserved on the trial of the cause. This motion was overruled, and judgment was rendered for the defendant. The plaintiff appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

JOHN LONDON, for appellant.—1. The court erred in sustaining the defendants demurrer to the fourth count of the complaint.—*Hertzfield v. Bailey*, 103 Ala. 473 ; 1 Amer. & Eng. Encyc. of Law, pp. 894, 913, 930.

2. The intended removal from the State of a resident citizen, does not render property which was theretofore, and until such intention was formed, exempt from seizure under execution or attachment, liable to seizure under attachment. An attachment sued out against a resident, known to have no property subject thereto, and seizure thereunder of property known to be exempt from such attachment, is both wrongful and vexatious. An attachment is in the nature of a proceeding *in rem*, and only such property as can be subjected to the claim sued on, can be lawfully seized. This court so declared in the following language : "Property which the constitution and statutes exempt from levy and sale is as free from seizure under attachment as it is from process which authorizes a sale."—*Hadley v. Bryars*, 58 Ala. 139. By force of the statute (Code, § 2540) the sheriff is relieved from any responsibility from levying on exempt property when no claim has been filed.with the probate court, and this immunity may extend to him, even though he knows that the property is exempt. But without the statute, the sheriff would be liable as a trespasser, for levying on property known to be not liable to seizure under the process.—*Alley v. Daniel*, 75 Ala. 403. This statutory protection is extended to the officer only ; it was never intended as a shield for a plaintiff who knowingly caused a levy to be made on property not subject thereto, but leaves him to the consequences of his own wrongful and wanton act.

If the plaintiff had offered to sell his horse and everything else he had (it all being within the thousand dollar limit), and had done so for the express and avowed purpose of removing from the State and settling elsewhere,

[Troy v. Rogers *et al.*]

it would not justify the levy of an attachment on it. *Fellows v. Loomis*, 65 Ala. 343 ; *McCrary v. Chase*, 71 Ala. 540 ; *Alley v. Daniel*, 75 Ala. 403 ; *Clark v. Spencer*, 75 Ala. 49 ; *Brinson v. Edwards*, 94 Ala. 447 ; *Fuller v. Whitlock*, 99 Ala. 411 ; *Lowenstein v. Bew*, 8 So. Rep. (Miss.) 674.

It has been expressly held in Missouri, that the fact that a debtor is about to remove out of the State, affords no ground for attaching exempt property.—*Davis v. Land*, 88 Mo. 436. And so it has been decided, that the fact that a debtor designs to sell his property or to remove beyond the jurisdiction of the court, an attachment which is sued out without the existence of any one of the statutory grounds is wrongful, and the plaintiff in attachment and his bondsmen are liable for the actual damages sustained, without reference to the motives which induced the plaintiff to sue out the attachment, or the grounds for his belief that a cause for attachment existed.

This principle has been asserted in an unbroken line of decisions from the earliest to the latest reports, and is the settled doctrine of this court.—*Kirksey v. Jones*, 7 Ala. 622 ; *Alexander v. Hutchison*, 9 Ala. 825 ; *Seay v. Greenwood*, 21 Ala. 494 ; *Stewart v. Cole*, 46 Ala. 651 ; *Durr v. Jackson*, 59 Ala. 209 ; *Pollock v. Gantt*, 69 Ala. 379 ; *City Bank v. Jeffries*, 73 Ala. 190 ; *Jackson v. Smith*, 75 Ala. 97 ; *Ala. Land Co. v. Reed*, 99 Ala. 24 ; *Brown v. Master*, 104 Ala. 451.

3. A citizen and resident of this State can not be about to remove therefrom without a purpose and intent to take up his residence in some other State or country. The principle here asserted was fairly presented by the charges numbered 2, 8 and 12 asked by the plaintiff, and charge number 2 asked by the defendants. The court below denied its correctness, and so charged the jury. In this there was manifest error.—Const., Art. I, § 32 ; *Pitts v. Burroughs*, 6 Ala. 733 ; *State v. Hallett*, 8 Ala. 159. In *Glover v. Glover*, 18 Ala. 367, the court uses the following comprehensive language : "A party having acquired a domicil in this State must be presumed to reside in it until he acquires one elsewhere, upon the well settled doctrine that when one's domicil has been acquired, it is not until a new one is actually gained *fact et animo*."—*Bragg v. State*, 69 Ala. 204 ; *Hertzfeld v.*

*Bailey*, 103 Ala. 473 ; 1 Amer. & Eng. Encyc. of Law, 897, n6 ; Drake on Attachments, §§ 39, 51, 61, 70.

4. The doctrine of equitable estoppel can have no application in a case like this. The acts and declarations of the plaintiff, as shown by the record, are not sufficient to create an equitable estoppel against him. It is settled that the representations must have referred to a present or past state of things ; that a mere statement of intention is not sufficient.—Bigelow on Estoppel, 574 ; *Langdon v. Dowd*, 10 Allen (Mass.) 433. The mere expression of an intention could not imply knowledge of the facts. There is absolutely no evidence that the statement was made with the intention that the other party should act upon it. "In general, where there is nothing reasonably indicating that the representations were intended to be acted upon as a statement of the truth, the party making it is not estopped from proving the truth."—Bigelow on Estoppel, 628. Only the person to whom the representation was made, or for whom it was intended or designed, can act upon it and avail himself of it.—Bigelow on Estoppel, 650 ; *Kinney v. Whiton*, 26 Amer. Rep. 462 ; *Andrews v. Lyons*, 11 Allen (Mass.), 349 ; *Eldred v. Hazlett*, 33 Pa. St. 307 ; *Collier v. Dick*, 111 Ala. 263 ; Hermann on Estoppel, 783, 787 ; 2 Story's Eq., § 1543 ; 7 Amer. & Eng. Encyc. of Law, 16 ; 6 Wait's Act. & Def., 679. The representations must be treated as true, and a valuable thing must be parted with, credit given or liability incurred in consequence of such representations and on confidence in its truth.—*Leinkauff v. Munter*, 76 Ala. 194 ; 5 Wait's Act. & Def., 679 ; Hermann on Estoppel, §§ 775, 778, 783, 785. The mere bringing of a suit and incurring costs is not sufficient.—*Eikenberry v. Edwards*, 67 Iowa, 14 ; *Conkey v. Hawthorne*, 69 Wis. 199 ; *Warder v. Baker*, 54 Wis. 49 ; *Bank v. Fulmer*, 2 Vroom, 52.

5. If the attachment was wrongful, the plaintiff was entitled to recover the actual damage he had sustained, including attorney's fees and expenses.—Drake on Attachments, § § 174, 175 ; *Metcalf v. Young*, 43 Ala. 643 ; *Burton v. Smith*, 49 Ala. 293 ; *Dothard v. Shield*, 69 Ala. 135 ; *Jackson v. Smith*, 75 Ala. 97 ; *Mitchell v. Corbin*, 91 Ala. 599 ; *Flournoy v. Lyon*, 70 Ala. 308 ; *Baldwin v. Walker*, 94 Ala. 514 ; *Ellis v. Allen*, 80 Ala. 515 ; *Higgins v. Mansfield*, 62 Ala. 267 ; 1 Sedgwick on Damages, 218 ; 2 Wait's Act. & Def. 463.

[Troy v. Rogers *et al.*]

6. The court erred in admitting in evidence the record of the judgment obtained by Rogers against Troy. The complaint, as amended, contains no denial of the debt claimed by Rogers, and so the evidence was immaterial and irrelevant to any issue raised by the pleadings.— *Brown v. Master,* 104 Ala. 451; *Durr v. Jackson,* 59 Ala. 203. The court erred in admitting in evidence, against objection, the statements made plaintiff three or four weeks before the attachment was sued out, and during the previous summer. They were no part of the *res gestæ,* and were entirely too remote.—*Pitts v. Burroughs,* 6 Ala. 733; *Newcomb v. Leavitt,* 22 Ala. 631; *Webb v. Kelly,* 37 Ala. 333; *Jackson v. Smith,* 75 Ala. 97; 1 Greenleaf on Ev.,§ 108, n 2. The court erred in admitting irrelevant and incompetent evidence, and overruling the motion to exclude the same. It is true that this court has held that the admission of a single piece of illegal evidence against objection, is not a reversible error, if the trial court, in its charge, distinctly withdraws it from the consideration of the jury. But this practice is reprobated as calculated to do injustice. This court has never decided that a trial court could admit a whole mass of illegal evidence, and permit the case to be tried and argued on wholly false issues, and then by a word, in his general charge, correct the wrong thus done. It is expecting too much from the average juror. The following cases declare and limit the rule :—*Abney v. Kingland,* 10 Ala. 355; *Bilberry v. Mobley,* 21 Ala. 277; *McCurry v. Hooper,* 12 Ala. 823; *McCargo v. Crutchen,* 27 Ala. 171.

BUSH & BROWN, *contra.*

HEAD, J.—In an action upon an attachment bond, it is not material that the defendant in attachment, at the time it was sued out, had no property except such as he was entitled to claim and hold as exempt from the payment of debts, unless, it may be, in connection with other evidence, the fact be admissible, evidentially, as tending to show malice or vexation on the part of the plaintiff suing it out. The statute prescribes the grounds upon which an attachment may be obtained, and if one of those grounds exists, the remedy is not wrongfully resorted to, whether the defendant had or had not prop-

[Troy v. Rogers *et al.*]

erty subject to the writ. The fourth count of the complaint was clearly bad, and charges 15, 16 and 17 requested by plaintiff were properly refused.

The cross-examination of plaintiff (defendant in attachment) in reference to his effort to sell his horse, rifle and furniture to Wellborn, and his statement that he expected to go to Georgia to sell gum, was proper upon the inquiry whether or not he was about to remove out of the State, at the time the attachment was sued out. The evidence called for was of his own acts and declarations, against interest, tending to show a purpose on his part to remove from the State, shortly before the attachment was sued out, and no question of *res gestæ* was involved. In the case cited by counsel, the declarations were sought to be introduced in favor of declarant, or against a claimant, and not against declarant himself, as in this case.

On like considerations, the exceptions to testimony of defendant, Rogers, of a like nature, were not well reserved.

The testimony in reference to certain proceedings in the probate court, and investments by the plaintiff in J. M. Fisher & Co., and the omission by plaintiff of certain articles from his exemption schedules, were expressly excluded from the jury by the court, and the jury instructed not to consider the same. The matter, therefore, is not proper for assignment of error here.

The attachment in question was sued out on the statutory ground that the defendant therein was "about to remove out of the State." The plaintiff now insists that not only an intent, about to be carried into effect, to remove out of the State, but an existing intent to acquire a residence or home in some other State or country, is essential to the existence of this ground of attachment. We think the contention adds to the statute. It is only necessary that the debtor is about to remove out of this State, with no fixed intention of returning, and it is not material whether he has determined upon a new residence or home for himself elsewhere or not. The charges requested by plaintiff asserting the principle contended for were properly refused.

Charge 6 is argumentative.

The general charge requested by plaintiff was properly refused.

· Charges 26 and 27 were abstract as to some of the items of damages which they required the jury to assess in favor of the plaintiff. As to the horse levied upon, the proof shows it was awarded to the plaintiff on the contest of exemptions, and, we presume, was delivered to him, yet the charge demands for the plaintiff its full value. There was no proof of costs and expenses which plaintiff had been subjected to in defending the attachment suit and in having the horse declared exempt, nor of travelling and other expenses in attending court, nor of how long the plaintiff was deprived of the use of the horse. There was proof of what was a reasonable attorney's fee for defending the attachment suit and asserting the claim of exemption, but none that plaintiff had incurred such an expense, paid or unpaid.

The defendant, Rogers, who was plaintiff in the attachment, testified that three or four weeks prior to the suing out of the attachment he had a conversation with Troy, the plaintiff, in which he, Troy, stated that he was "going to shake the dust of this country off of his feet; that the Elyton Land Company had reduced his salary to $75 a month." In view of this evidence, the trial court, at the request of defendants, charged the jury as follows : "If the jury believe from the evidence that the plaintiff, before the suing out of the attachment, in substance, said to the defendant that he was about to remove out of the State of Alabama, and defendant, honestly acting on said statement, sued out said attachment on the ground that plaintiff, Troy, was about to remove out of the State, believing and acting on it as a fact that plaintiff was about to remove out of the State, then plaintiff is estopped to deny that he was about to remove out of the State."

The constituents of an estoppel by conduct, as they were stated by Mr. Bigelow in his work on Estoppel (1 ed., p. 489) are : 1. A representation or concealment of material facts ; 2. The representation must have been made with knowledge of the facts ; 3. The party to whom it was made must have been ignorant of the truth of the matter ; 4. It must have been made with the intention that the other party should act upon it ; and 5. The other party must have been induced to act upon it.

Consideration of the first and fourth of these proposi-

tions will determine the instruction to have been erroneous.

1. "The representation or concealment," says Mr. Bigelow, "must in all ordinary cases, have reference to a present or past state of things ; for if a party make a representation concerning something in the future, it must generally be either a mere statement of intention or opinion, uncertain to the knowledge of both parties, or it will come to a contract, with the peculiar consequences of a contract. The point is well illustrated in a recent case in Massachusetts (*Langdon v. Doud*, 10 Allen, 433) where the plaintiff sued the defendant as maker of a promissory note, to which the statute of limitations was pleaded. The plaintiff introduced evidence to show that in March, 1855, the defendant, who then lived in Massachusetts, told the plaintiff that he was going to California in about a month from that time never to return, and would within that month pay the note, and that he left for California the next day and remained there until the autumn of 1858, when he returned to Massachusetts. The plaintiff also offered evidence to prove that he was induced by the defendant's statement to believe that the defendant never would return to Massachusetts, and, therefore, did not bring any suit during his absence believing that the defendant intended to reside in California, and that if he should happen to return, the time of his absence would be excluded ; but the evidence was not received." The court said, among other things, that the representation was "only of a present intention or purpose. It was not a statement of a fact or state of things, *actually existing, or past and executed*, on which a party might reasonably rely as fixed and certain, and by which he might be properly guided in his conduct, and induced to change his position in the manner alleged by the plaintiff. The intent of a party, however positive and fixed, is necessarily uncertain as to its fulfillment, and must depend on contingencies and be subject to be changed and modified by subsequent events and circumstances. Especially is this true in regard to the place of one's domicile. On a representation concerning such a matter no person would have a right to rely, or to regulate his action in relation to any subject in which his interest was involved as upon a fixed, certain and definite fact or state of things, permanent in

[Troy v. Rogers *et al.*]

its nature and not liable to change. A person cannot be bound by any rule of morality or good faith not to change his intention, nor can he be precluded from showing such a change merely because he has previously represented that his intentions were once different from those which he eventually executed. The reason [of the doctrine of estoppel] wholly fails when the representation relates only to a present intention or purpose of a party, because, being in its nature uncertain and liable to change, it could not properly form a basis or inducement upon which a party could reasonably adopt any fixed and permanent course of action." The applicability of this principle to the statement of Troy, giving the statement its strongest possible intendment against him, is apparent without comment; and,

2. It needs but to be said that the statement shows upon its face that it was no more than a casual declaration made in relation to no business affair or transaction with Rogers, and never intended by Troy to be acted on by Rogers, or any one else, in reference to any affair of business.

The refusal of charge three was justified by the requirement therein made, that the existence of cause of attachment must not have been in the belief of the defendant, Rogers. The belief of Rogers in the matter was of no importance except upon the measure of damages, and, if ground of attachment existed, it certainly was not impaired, as a defense to this action, by the fact that Rogers believed it existed. But for this defect— inadvertent, no doubt—the charge would have been good.

Charge 12 ought to have been given.

The record of the judgment obtained by the plaintiff in the attachment suit was irrelevant, since there was no issue made as to the fact of the indebtedness.

Reversed and remanded.