MONTGOMERY v. YARBROUGH.

(In Banc. Feb. 23, 1942. Suggestion of Error Overruled March 23, 1942.)

[6 So. (2d) 305. No. 34848.]

(In Banc.   March 23, 1942.)

[6 So. (2d) 925.   No. 34848.]

658

A. H. Carmichael, of Tuscumbia, Ala., C. A. Gober, of Iuka, Jas. A. Cunningham, Sr. & Jr., and Gettys Lee, all of Booneville, for appellant.

Lyle V. Corey, of Meridian, for appellee.

660

Argued orally by **Lyle V. Corey**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

This is a suit by attachment in chancery against the appellant as a nonresident to subject his lands to the payment of two certain promissory notes on which he is an endorser, and which are held by the appellee as assignee of the Bank of Tuscumbia, Alabama. The notes were executed and delivered in the State of Alabama, and therefore the liability of the appellant is controlled by the substantive law of that state.

One of the notes was executed by J. W. Stockton as principal maker for the sum of $395, due March 8, 1932, and the other was executed by D. M. and D. C. Hand as principal makers for the sum of $330.30, due October 15, 1932. Each of the notes were secured by chattel mortgage on agricultural products and certain livestock belonging to the said Stockton and Hand, respectively, and which collaterals were more than ample in value to take care of the indebtedness due in each instance on the notes to which the same were pledged, when the appellant called at the Bank of Tuscumbia in the Fall of 1932 and stated to the officer in charge that "the collateral was there and worth what they had against it and to collect it, that he collect it now," and when he says that the officer replied; "Don't you worry about the collateral —We will get it out of the collateral."

It was further shown that the appellant had several conversations in regard to these notes with the officer of the bank during the three years immediately following their maturity, but he did not recall just what was said in particular on these occasions except "that the collateral was there and it was ample to pay all against it and that they should go ahead and get it;" that in February, 1935, the Hand note, though long past due, was extended by written agreement of all the parties until November, 1935, and the collateral was still in existence when this note again fell due, no payment having ever been made thereon. Subsequent to November, 1935, all of the livestock conveyed by the chattel mortgage securing the notes had died or had been disposed of by the mortgagor, also the agricultural products grown each year had been disposed of.

The effect of the testimony offered by the appellant as a defense to his alleged liability as endorser on the notes was that his conversations with the officer of the bank amounted to a request that the chattel mortgages be foreclosed, not that suit be instituted on the notes, and that although he knew in November, 1935, and long prior thereto that nothing had been done in response to his several requests in that behalf during the three preceding years, he did not at any time tender payment of the notes to the bank and request an assignment to him of the collateral in order that he might foreclose the same, but assumed that the failure of the bank to foreclose the mortgages following the due dates of the notes, when there was ample collateral to satisfy the same, had the effect of releasing him as an endorser thereon.

It appears that Stockton was a tenant during the years 1932 and 1933, and that during those years the appellant made four separate payments aggregating $86.30 on this note from the proceeds of cotton grown by the tenant, the last of which payments was on November 20, 1933, within six years prior to the date of the filing of this suit.

The question presented for decision on the direct appeal is whether or not the demand made of the holder of the Hand note to proceed and foreclose on the collateral security, its alleged agreement to do so, and subsequent failure in that behalf, relieved the appellant as endorser from any further liability thereon; and the question for decision on the cross-appeal is whether our statute of limitation, Section 2292, Code of 1930, is applicable, or whether the above mentioned payments made on the Stockton note by the appellant, with the funds of his tenant Stockton, as principal maker, served to toll the running of and render applicable the six-year statute of limitations of the State of Alabama, Sections 8941, 8944, 8964, Code of 1923, Code Ala. 1940, Tit. 7, Secs. 18, 21, 40, the latter section providing that ''no act, promise, or acknowledgment is sufficient to remove the bar to a suit created by the provisions of this chapter, or is evidence of a new and continued contract, except a partial payment made upon the contract by the party sought to be charged before the bar is complete, or an unconditional promise in writing, signed by the party to be charged thereby,''— the decree of the court below having granted a recovery in favor of the appellee for the full amount of the Hand note, including principal, interest and a reasonable attorney's fee, as provided for therein, together with all cost of the suit, and having denied a recovery in favor of the appellee on the Stockton note on the ground that the partial payments made thereon by the appellant during the years of 1932 and 1933, before the bar of the statute of limitations was complete, did not prevent the statute from beginning to run from the due date of said note.

In the case of Howle v. Edwards, 97 Ala. 649, 11 So. 748, decided on December 2, 1892, it was held that where a defendant was sued as surety on a note, and alleged as a defense that he requested the holder of the note to bring suit thereon; and that at that time, and long afterwards, his principal had personal property from which the note

could have been collected, but that the creditor failed to bring suit as requested, and permitted the principal debtor to dispose of his property, a demurrer to the plea should have been overruled, since Section 3153 of the Code of Alabama then, in force (brought forward and amended as Section 9555, Code of 1923,. Code Ala. 1940, Tit. 9, Sec. 89) which provided that a surety may require a creditor by notice in writing to bring suit against the principal debtor, and, if he does not do so the surety is discharged, does not abrogate the common law rule that such request of the holder of a note, though not in writing, discharges the surety when, by negligence of the creditor to sue, the means of recovery against the principal are lost.

But the Supreme Court of Alabama has recognized a distinction between a request on the part of a surety to bring suit against the principal maker on the note and a request by a surety to foreclose a mortgage. In the case of the Branch Bank of Alabama v. Perdue, 3 Ala. 409, 7 Smith's Condensed Reports of Alabama 197, one of the pleas of the defendant was that he is a surety and as such, gave notice to the plaintiff to foreclose a mortgage which had been executed to it by his principals, but the plaintiff failed to proceed on its mortgage, which, at the time of the notice, was ample security, but has since, by the depreciation of the mortgage premises, proved insufficient for the payment of the debt. The plaintiff joined issue on the plea, and the case was tried by a jury resulting in a verdict for the defendant. The court charged the jury that the notice given by the defendant to foreclose the mortgage was sufficient to make it the duty of the plaintiff to comply with the request of the defendant without delay. And, the court said:

"It has been so often decided, as to be considered the settled law of this Court, that a surety may quicken the diligence of the creditor, by requiring him to put in suit the security by which the debt is evidenced, and if upon such requisition, suit is not brought, and it appears that

it might have been made available, the subsequent insolvency of the principal, is a good defence for the surety, even at law. . . . But this principle we think cannot be applied without disturbing others equally well settled, so as to authorize the surety to require the principal, by a mere notice, to proceed on any collateral security he may have for the payment of the debt. By a collateral security, we mean one in which the surety is not bound, or one which is apart from the principal or primary engagement.

"Where the principal and surety make a direct promise in writing to pay money, and in addition, one or both of them execute a mortgage to the creditor, to secure a performance of their undertaking, the creditor is not obliged to proceed upon his mortgage, but may either foreclose it, or prosecute an action at law upon the promise of the debtor and his surety. The mortgage is a mere security for the debt, and is regarded as an incident to the legal contract to pay. . . .

"The principle which recognizes the right of the surety to require the note or bond of the principal to be put in suit, must proceed upon the idea that the creditor impliedly undertakes to do so, upon a notice to that effect being given him. In the Manchester Iron Mfg. Co. v. Sweeting, 10 Wend. [N. Y.], 162, the court says where the plaintiff refuses to prosecute the principal, on the request of the surety, his neglect is a virtual agreement to discharge the former, and look alone to the responsibility of the latter. But this reasoning cannot be applied to a notice to foreclose a mortgage, for that constitutes no part of the contract to pay the debt, but is merely assistant to it."

In the case of Montgomery Bank & Trust Company v. Kelly, 202 Ala. 656, 81 So. 612, 614, relied on by the appellant, it was held that in the absence of a special agreement, a pledgee is invested with a discretion with respect to a sale of the subject of the pledge, and is not bound to sell collateral in order to avoid liability for its

depreciation occurring after the maturity of the debt to secure which the property is pledged; but that where a pledgee by contract agrees to sell the pledged property upon default in payment of the debt thereby secured, the pledgee is obligated to do so by virtue of his agreement contained in the contract. In that case, however, the contract sued on expressly stipulated for a sale of the collateral upon default in the payment of the notes, and affirmatively bound the plaintiff to do so, and the court held that in such case ''no discretion in the premises, like that the common law recognizes in the absence of special agreement, was left in the pledgee, plaintiff; and no notice or demand by the defendant was a prerequisite to plaintiff's liability if the plaintiff breached its contractually assumed, positive duty to sell upon the happening of the event stipulated.'' In that case, however, the plaintiff agreed that if the defendant would sign the renewal notes, the plaintiff bank would sell the bank stock which it held as collateral to the notes, if they were not paid at maturity. In other words, the agreement to sell the collateral if the notes were not paid at maturity constituted the consideration upon which the defendant endorsed the same. That case is clearly distinguishable from the case at bar in that the request made by the surety that the chattel mortgages be foreclosed transpired after maturity of the notes, and the alleged agreement of the holder to do so was merely a promise to do something in the future, which promise was not supported by any consideration, and not being a representation of a past or existing fact, but merely an expression of a future intention, did not work an equitable estoppel against the holder of the notes to later sue the appellant as endorser thereon. On the question of consideration, the appellant as endorser did not at the time of requesting a foreclosure of the chattel mortgages surrender his right to pay the debt and take an assignment thereof, but acquiesced for three years in the failure of . the holder of the notes to foreclose the mortgages, having

at all times the same rights in the premises that he had when the request was made. As to the issue of estoppel, wherein no consideration is necessary when the acts or conduct of a party are such as to estop him from insisting upon a right, the Supreme Court of Alabama in the case of Troy v. Rogers, 113 Ala. 131, 20 So. 999, 1003, quotes the essential elements of an estoppel by conduct, as they were stated by Mr. Bigelow in his work on Estoppel (1st Ed., p. 489), and also his statement to the effect that the representation relied upon "must in all ordinary cases have reference to a present or past state of things; for, if a party make a representation concerning something in the future, it must generally be either a mere statement of intention or opinion, uncertain to the knowledge of both parties, or it will come to a contract, with the peculiar consequences of a contract." That is to say, it must be supported by a consideration and the other necessary elements of a contract. The court then further quotes Mr. Bigelow with approval when he says that "a person cannot be bound, by any rule of morality or good faith, not to change his intention; nor can he be precluded from showing such a change merely because he has previously represented that his intentions were once different from those which he eventually executed. The reason (of the doctrine of estoppel) wholly fails when the representation relates only to a present intention or purpose of a party, because, being in its nature uncertain, and liable to change, it could not properly form a basis or inducement upon which a party could reasonably adopt any fixed and permanent course of action." Moreover, the appellant had known for three years that the holder of the notes was taking no steps to collect the same from the collateral pledged to their payment. His acquiescence in the course pursued by the bank, as the then holder of the notes, was further evidenced by the fact that after having requested a foreclosure of these chattel mortgages in October, 1932, he agreed to an extension of the Hand note in February, 1935, until Novem-

ber, 1935, and obligated himself to remain bound for its payment long after making the request which he now says released him from further liability.

We are therefore of the opinion that the decree of the court below was correct in allowing a recovery on the Hand note for the amount sued for, and that such decree must be likewise affirmed on the cross-appeal wherein it denied a recovery on the Stockton note which fell due on March 8, 1932, as being barred by the six-year statute of limitation, notwithstanding the partial payments subsequently made thereon, Sec. 2292, Miss. Code of 1930, since the *lex fori* governs as to the remedy for the enforcement of a right in this state under a contract executed in another state. Wright v. Mordaunt, 77 Miss. 537, 27 So. 640, 78 Am. St. Rep. 536; Philp v. Hicks, 112 Miss. 581, 73 So. 610; Fisher v. Burk et al., 123 Miss. 781, 86 So. 300; 11 Am. Jur. 505, Sec. 191.

Section 2311, Code of 1930, has no application, "because its sole purpose and effect are to give to one sued in this state the benefit of a bar completed elsewhere." Wright v. Mordaunt, supra.

The motion of the appellee for an allowance by this court of an attorney's fee for services rendered on this appeal must be and it is hereby overruled notwithstanding the case of Somerall et al. v. Citizens' Bank, 211 Ala. 630, 101 So. 429, since that decision is authority only for the proposition that a trial court is entitled to take into consideration the service rendered on a former appeal to the Supreme Court in fixing a reasonable attorney's fee on a note after reversal and remand for a new trial.

Affirmed on both direct and cross-appeal.

ON SUGGESTION OF ERROR.

**Griffith, J.,** delivered the opinion of the court on suggestion of error.

With reference to the Stockton note to which we applied our six-year statute of limitations, Code 1930, Sec. 2292, as of the date of the original maturity of the note, appellee argues that under the law of Alabama a partial payment upon an existing obligation operates in substance as a new promise. If this be conceded, nevertheless it remains true, as said in Obear v. First National Bank, 97 Ga. 587, 25 S. E. 335, 336, 33 L. R. A. 384, that "a law prescribing the manner in which a new promise, or a payment from which such a promise will be implied, shall be evidenced in order to extend the period within which suit may be brought upon a contract, relates to the remedy, and does not affect the intrinsic validity of the promise." We look, therefore, to our own statutes for matters which relate to the remedy and as to how such new promises may be evidenced, and we find at once that our statute, Section 2318, Code 1930, provides that "In actions founded upon any contract, an acknowledgment or promise shall not be evidence of a new or continuing contract whereby to take any case out of the operation of the provisions of this chapter (Limitations of Actions) or to deprive any party of the benefit thereof, unless such acknowledgment or promise be made or contained by or in some writing signed by the party chargeable thereby."

Suggestion of error overruled.