529 So.2d 557 (1988)
Nevin SHEWBROOKS, et ux.
v.
A.C. AND S., INC., et al.
No. 56014.
Supreme Court of Mississippi.
May 11, 1988.
Rehearing Denied July 13, 1988.
*558 Michael B. Wallace and Julie L. Sneed, Phelps, Dunbar, Marks, Claverie & Sims, Jackson, for appellants.
Richard L. Forman and Walter G. Watkins, Jr., Butler, Snow, O'Mara, Stevens & Cannada, Natie P. Caraway and John D. Price, Wise, Carter, Child & Caraway, Michael S. Allred and Thomas L. Kirkland, Jr., Satterfield & Allred, Curtis E. Coker and Gary K. Jones, Daniel, Coker, Horton & Bell, Edward J. Currie, Jr., Steen, Reynolds, Dalehite & Currie, Jackson, James O. Dukes, Bryant, Stennis & Colingo, Gulfport, *559 P.N. Harkins, III, William F. Goodman, III, and Douglas J. Gunn, Watkins & Eager, Thomas W. Tardy, III, Thomas, Price, Alston, Jones & Davis, and Don Moore, Jackson, for appellees.
En Banc.

ON PETITION FOR REHEARING
HAWKINS, Presiding Justice, for the Court:
The Petition for Rehearing is granted and the following substituted for the opinion of the Court.
Nevin and Anna Mae Shewbrooks have appealed from a judgment of the circuit court dismissing their action against A.C. and S., Inc., and numerous other corporate co-defendants because of lack of personal jurisdiction over the defendants and forum non conveniens. Finding the circuit court in error, we reverse and remand for trial upon the merits.

FACTS
Nevin and Anna Mae Shewbrooks, Delaware residents, filed suit in the circuit court of the 1st Judicial District of Hinds County against 18 corporate defendants, none of which had its principal office or was domiciled in Mississippi. The suit was for asbestos poisoning received by Shewbrooks in Delaware, New Jersey and Pennsylvania as a result of mining, manufacturing and distribution of asbestos by the various defendants. The defendants are engaged in business in this state and are subject to process in this state.[1]
The complaint charges the defendants with knowingly mining, manufacturing and marketing asbestos years after discovery of its dangers, and concealing its hazards from their employees and the public. It also charges a conspiracy between them to conceal such dangers.
The circuit court sustained motions to dismiss on two grounds: lack of personal jurisdiction over the defendants and forum non conveniens. The circuit court clearly erred in dismissing for lack of jurisdiction.

LAW
There is no serious contention on appeal that the circuit court lacked personal jurisdiction of the defendants, all of which do business in Mississippi and are subject to process in this state. This ground of dismissal needs little discussion.
The fact that a plaintiff and a defendant are non-residents of a state in a transitory cause of action which accrued in another state does not, in and of itself, deprive a court of lawful authority (i.e., "jurisdiction") to hear the case, and this is universally recognized by all courts.
This familiar principle of law was settled in this state long ago in Pullman Palace Car Co. v. Lawrence, 74 Miss. 782, 22 So. 53 (1897). In that case the plaintiff lived in Illinois, the defendant corporation was domiciled in Illinois, and the assault on the plaintiff by an employee of the defendant occurred in Illinois. Suit, however, was brought in the circuit court of Claiborne County. We then held that there was:
[I]n our own state, no ground left for dispute that in transitory actions, whether in tort or on contract, our courts were wide open to any suitor, resident or non-resident, against his adversary, whether resident or nonresident, whether a natural person or an artificial one, regardless of where the right of action occurred, if only the courts had jurisdiction of the subject-matter, and could obtain jurisdiction of the party, either by a voluntary *560 appearance, or by service of process. [Emphasis added]
Id. 74 Miss. at 796, 22 So. at 55. See: Read v. Sonat Offshore Drilling, Inc., 515 So.2d 1229 (Miss. 1987); Slater v. Mexican Nat'l R.R. Co., 194 U.S. 120, 48 L.Ed. 900, 24 S.Ct. 581 (1904); 30 A.L.R. 255.
We turn then to the other ground for dismissal.

I.

WHAT COURTS ARE ALL ABOUT
Courts of this nation are the passive branch of government. We have no lawful authority to decide any issue or pronounce any law not required from the facts squarely presented in an actual case before us. The converse of this is also true. When we have a case before us which we have the lawful authority to decide, we have no authority not to decide it. We can neither ask for nor invite lawsuits, but at the same time  and just as important  we cannot refuse to hear a case, either. That is, we cannot refuse in conformity with our solemn responsibility as a court.
In Cohens v. Virginia, 19 U.S. (6 Wheat) 264, 404, 5 L.Ed. 257, 291 (1821), the United States Supreme Court speaking through Chief Justice Marshall, stated:
It is most true, that this court will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction, if it should. The judiciary cannot, as the legislature may, avoid a measure, because it approaches the confines of the constitution. We cannot pass it by, because it is doubtful. With whatever doubt, with whatever difficulties a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. Questions may occur, which we would gladly avoid; but we cannot avoid them. All we can do is, to exercise our best judgment, and conscientiously perform our duty... . We find no exception to this grant, and we cannot insert one. [Emphasis added]
That Court in Knox County v. Aspinwall, 65 U.S. (24 How.) 376, 16 L.Ed. 735 (1861), stated:
[B]ut no court, having proper jurisdiction and process to compel the satisfaction of its own judgments, can be justified in turning its suitors over to another tribunal to obtain justice.
65 U.S. at 385.
In Willcox v. Consolidated Gas Co., 212 U.S. 19, 40, 29 S.Ct. 192, 195, 53 L.Ed. 382, 394, 48 LRA NS 1134 (1909), that Court stated: "When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction." 212 U.S. at 40, 29 S.Ct. at 195, 53 L.Ed. at 394-395.
This holding was repeated by the United States Supreme Court in England v. Louisiana Medical Examiners, 375 U.S. 411, 415, 84 S.Ct. 461, 464, 11 L.Ed.2d 440, 445 (1964).
In State v. Killigrew, 202 Ind. 397, 174 N.E. 808 (1931), the Indiana Supreme Court held:
[W]hen a court has jurisdiction over a class of cases and one seeking relief invokes the jurisdiction of the court in the manner prescribed by law, the particular cause is, ipso facto, under the jurisdiction of the court and the court cannot refuse jurisdiction.
Id. at 809.
The Indiana Supreme Court again in Rosenbarger v. Marion Circuit Court, 239 Ind. 132, 155 N.E.2d 125 (1959), held:
[T]he power to hear and decide carries with it the duty to do so. Mandate will lie to require an inferior court to hear the merits of a cause where it was improperly dismissed.
Id. at 127.
In Kruidenier v. McCulloch, 257 Iowa 1315, 136 N.W.2d 546 (1965), the Iowa Supreme Court held:
[S]tate courts of original jurisdiction have the duty to hear and determine cases properly before them. Such courts may not deny relief to persons properly *561 before them to the extent to which they are entitled and the courts have power to afford under the circumstances.
Id. at 547.
In Lansverk v. Studebaker-Packard Corp., 54 Wash.2d 124, 338 P.2d 747 (1959), the Washington Supreme Court held:
[W]e find nothing in our constitution, our statutes, our rules, or our decisions that recognizes the existence of any discretion in the superior court of any county to decline to exercise the jurisdiction with which it is vested by the constitution and our statutes because of forum non conveniens.

Id. at 748. See also: Vickers v. Kansas City, 216 Kan. 84, 531 P.2d 113, 121 (1975); Buckman v. United Mine Workers of America, 80 Wyo. 199, 339 P.2d 398, 400 (1959).
Neither can state courts make a distinction in access to its courts between in-and out-of-state citizens. Article 4, § 2, Paragraph 1 of the United States Constitution provides: "The Citizens of each state shall be entitled to all Privileges and Immunities of Citizens in the several States." In Chambers v. Baltimore & O.R. Co., 207 U.S. 142, 28 S.Ct. 34, 52 L.Ed. 143 (1907), the United States Supreme Court held:
[D]ifferent states may have different policies, and the same state may have different policies at different times. But any policy the state may choose to adopt must operate in the same way on its own citizens and those of other states. The privileges which it affords to one class it must afford to the other. Any law by which privileges to begin actions in the court are given to its own citizens and withheld from the citizens of other states is void, because it is in conflict with the supreme law of the land.
207 U.S. at 149, 28 S.Ct. at 35.
Likewise, a court of this state may not decline jurisdiction because it is based on the law of another state. See: First Nat'l Bank v. United Airlines, Inc., 342 U.S. 396, 72 S.Ct. 421, 96 L.Ed. 441 (1952); Hughes v. Fetter, 341 U.S. 609, 71 S.Ct. 980, 95 L.Ed. 1212 (1951).

II.

FORUM NON CONVENIENS
There is one important qualification to this principle, and that is the doctrine of forum non conveniens. As stated in 20 Am.Jur.2d, Courts, § 172:
[T]he doctrine of forum non conveniens is a most important qualification of the general theory that a court which has jurisdiction of a case has not only the right, but also the duty to exercise it, ...
Section 84 of the Restatement (Second) of Conflict of Laws (1971), embraces this proposition:
§ 84. Forum Non Conveniens
A state will not exercise jurisdiction if it is a seriously inconvenient forum for the trial of the action provided that a more appropriate forum is available to the plaintiff.
* * * * * *
(a) Rationale ... The rule has been developed that a court, even though it has jurisdiction, will not entertain the suit if it believes itself to be a seriously inconvenient forum provided that a more appropriate forum is available to the plaintiff.
Of key importance is a recognition of a clear-cut type of case in which this doctrine has never been applied. In a suit between United States citizens, no court has ever applied the doctrine of forum non conveniens to dismiss a case when there was no other forum available to the plaintiff.
As was stated by the Supreme Court of Tennessee in Zurick v. Inman, 221 Tenn. 393, 426 S.W.2d 767, 771 (1968):
The doctrine of forum non conveniens presupposes the court has jurisdiction of both the parties and the subject matter. The doctrine also presupposes there is at least one forum other than the forum chosen where the plaintiff may bring his cause of action, and it is necessary the trial court determine such other forum is available.
In Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 506-07, 67 S.Ct. 839, 842, 91 L.Ed. *562 1055 (1947), the United States Supreme Court stated:
In all cases in which the doctrine of forum non conveniens comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them.
See also: Koster v. Lumbermen's Mutual Casualty Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947); Menendez-Rodriquez v. Pan American Life Ins. Co., 311 F.2d 429, 432 (5th Cir.1962); Bewers v. American Homes Products Corp., 117 Misc.2d 991, 459 N.Y.S.2d 666, 670 (1982); MacLeod v. MacLeod, 383 A.2d 39, 42 (Me. 1978); Holmes v. Cyntex Laboratories, Inc., 156 Cal. App.3d 372, 202 Cal. Rptr. 773, 780 (1984).
And, there is one classic instance when the doctrine of forum non conveniens will never be applied, and that is to dismiss a case if it is barred elsewhere by a statute of limitations, unless or until the defendant is willing to stipulate that he will waive the statute of limitation defense.
Thus, in the comment under § 84 of the Restatement, supra, we find the following:
c. Factors to be considered. The two most important factors look to the court's retention of the case. They are (1) that since it is for the plaintiff to choose the place of suit, his choice of a forum should not be disturbed except for weighty reasons, and (2) that the action will not be dismissed unless a suitable alternative forum is available to the plaintiff. Because of the second factor, the suit will be entertained, no matter how inappropriate the forum may be, if the defendant cannot be subjected to jurisdiction in other states. The same will be true if the plaintiff's cause of action would elsewhere be barred by the statute of limitations, unless the court is willing to accept the defendant's stipulation that he will not raise this defense in the second state.
To insure an alternative forum is available, the overwhelming authority in this country requires a defendant to waive the statute of limitations before the court will grant a forum non conveniens transfer. See:
California

Holmes v. Cyntex Laboratories, 156 Cal. App.3d 372, 202 Cal. Rptr. 773, 780 (1984).
Colorado

Kelce v. Touche Ross Co., 37 Colo. App. 352, 549 P.2d 415, 418 (1976).
Connecticut

Miller v. United Technologies Corp., 40 Conn. Supp. 457, 515 A.2d 390, 393 (1986).
District of Columbia

Mills v. Aetna Fire Underwriters Ins. Co., 511 A.2d 8, 13-14, (App.D.C. 1986).
Illinois

Ellis v. Outboard Marine Corp., 132 Ill. App.3d 532, 87 Ill.Dec. 875, 478 N.E.2d 14, 16 (1985).

Torrijas v. Midwest Steel Erection Co., 130 Ill. App.3d 788, 86 Ill.Dec. 53, 474 N.E.2d 1250, 1255 (1984).

Wieser v. Missouri Pacific R.R., 98 Ill.2d 359, 74 Ill.Dec. 596, 456 N.E.2d 98, 105 (1983).
Kansas

Panhandle Eastern Pipe Line Co. v. Herren, 207 Kan. 400, 485 P.2d 156, 157 (1971).
Maine

MacLeod v. MacLeod, 383 A.2d 39, 44 (Me. 1978).
Michigan

Bellin v. Johns-Mansville Sales Corp., 141 Mich. App. 128, 366 N.W.2d 20, 23 (1984).
Missouri

Besse v. Missouri Pacific R.R., 721 S.W.2d 740, 743 n. 3 (Mo. 1986).
New Hampshire

Smith v. Smith, 125 N.H. 336, 480 A.2d 158, 159-60 (1984).
New Mexico

State ex rel. Southern Pacific Transp. Co. v. Frost, 102 N.M. 369, 695 P.2d 1318, 1320 (1985).

*563 New York

McLeod v. Lovelace, 117 A.D.2d 989, 499 N.Y.S.2d 290, 291 (N.Y. App. Div. 1986).

Tetra Finance (HK), Ltd. v. Patry, 115 A.D.2d 408, 496 N.Y.S.2d 37, 38 (1985).
North Carolina

Motor Inn Management v. Irvin-Fuller Development Co., 46 N.C. App. 707, 266 S.E.2d 368, 371 (1980).
Pennsylvania

Daugherty v. Inland Tugs Co., 240 Pa.Super. 527, 359 A.2d 465, 467 (1976).

Norman v. Norfolk & W. Ry. Co., 228 Pa.Super. 319, 323 A.2d 850, 855 (1974).
Thus in Torrijas v. Midwest Steel Erection Co., supra, we find the following illustrative statement:
Since the time limitations involved in certain of these cases may have run, this disposition is conditioned on the defendant's waiver of the statute of limitations, or similar defense, when the particular cause is transferred to another forum. (Foster v. Chicago & North Western Transportation Co., (1984), 102 Ill.2d 378, 385, 80 Ill.Dec. 746, 466 N.E.2d 198.) This disposition with the foregoing condition is applicable individually and severally to each case herein. If the defendant or defendants in any case involved herein refuses to waive the limitations defense, then in such instance plaintiff shall be given leave to reinstate the particular cause in the circuit court of Cook County.
86 Ill.Dec. at 58, 474 N.E.2d at 1255.
Federal district courts of this state, as a condition precedent to sustaining a forum non conveniens transfer motion, require the defendant to waive any statute of limitation defense. Tisdale v. Stone & Webster Corp., 595 F. Supp. 1016, 1020 (S.D. Miss. 1984).
The only authority which may cursorily appear to suggest otherwise is Islamic Republic of Iran v. Pahlavi, 62 N.Y.2d 474, 467 N.E.2d 245, 478 N.Y.S.2d 597 (1984). That case, however, remains markedly different from this case. It involved a suit filed by Ayatollah Khomeini's government of the Islamic Republic of Iran against the former Shah and his wife charging a breach of fiduciary duty to the people of Iran and asking for a judgment against the defendants for $35 billion actual and $20 billion punitive damages. The only argument made by the plaintiff to the motion to dismiss on the ground of forum non conveniens was the unavailability of an alternate forum. The Court of Appeals responded that there would be a question whether the judgment of a New York court would be effective in any event, that the defendants could not defend the claim in any meaningful way because all the records and witnesses were in Iran, and finally if the plaintiff could not proceed to a valid judgment in its own courts, it was its own fault. Thus, the Court of Appeals found all these factors overwhelmingly arrayed against the contention that there was not an alternative forum. The court stated:
Arrayed against this [unavailability of alternate forum] is the substantial burden upon the courts of this State and the possibility that its judgment may be ineffectual because of its inability to impose a constructive trust on defendant's assets if they are not in New York. Moreover, defendant probably cannot defend this claim in any realistic way because the witnesses and evidence are located in Iran under plaintiff's control and are not subject to the mandate of New York's courts. Indeed, plaintiff's counsel conceded on oral argument that ideally the action should be maintained in Iran but contended that New York was the better forum. If the action cannot be maintained in Iran, however, under laws which result in judgments cognizable in the United States or other foreign jurisdictions where the Shah's assets may be found, then that failure must be charged to plaintiff. It is, after all, the government in power, not a hapless national victimized by its country's policies. Any infirmity in plaintiff's legal system should weigh against its claim of venue, not impose disadvantage on defendant or the judicial system of this State.
*564 478 N.Y.S.2d at 601-02, 467 N.E.2d at 249-50.
We note the following differences in that case and this:
(1) That case involved foreigners exclusively. The privileges and immunities clause of the United States Constitution was not affected.
(2) The court of New York doubted if it had the power to afford complete relief, of which there is no doubt in this case.
(3) If the plaintiff could not get complete relief under the judicial system of Iran, it was the plaintiff's own fault.
(4) There was no statute of limitations involved in that case.
That the courts of New York would not apply Islamic Republic to the facts of this case is made clear in McLeod v. Lovelace, 117 A.D.2d 989, 499 N.Y.S.2d 290 (1986), a suit by a Canadian citizen against another Canadian citizen following a one-car accident in New York. The trial court dismissed the case on the ground of forum non conveniens, and the New York Supreme Court affirmed, because it found the New York forum inconvenient, and "another forum is available which best serves the ends of justice and the convenience of the parties." This case, while citing Islamic Republic, concludes:
[T]o assure the availability of such forum the dismissal is affirmed on condition that defendant stipulates to accept service of process in Canada, to appear in an action commenced there for the same relief demanded in the complaint here and to waive any defense of the Statute of Limitations therein. If defendant fails to do so stipulate within 30 days after service of the order entered herein with notice of entry, the order is reversed, with costs to plaintiff. [Citations omitted; Emphasis added]
499 N.Y.S.2d at 291.

III.

STATUTE OF LIMITATION BAR
Appellees also contend on appeal that the judgment of dismissal was correct as a matter of law, even though the circuit judge may have assigned the wrong reasons in granting it. It is true that an appellate court has the obligation to affirm a trial court judgment correct as a matter of law, even though the trial court may have been mistaken in its reason for granting the judgment. Hickox v. Holleman, 502 So.2d 626 (Miss. 1987); Allgood v. Bradford, 473 So.2d 401 (Miss. 1985); Tedford v. Dempsey, 437 So.2d 410 (Miss. 1983); Huffman v. Griffin, 337 So.2d 715 (Miss. 1976).
Limitations on the time within which an action must be brought are created by statute only. They are legislative, not judicial acts. Thus, in State Board of Adjustment v. State, 231 Ala. 520, 165 So. 761, 762 (Ala. 1936), the Alabama Supreme Court held:
[T]here was no such thing as a limitation of action at common law. The right is wholly statutory, and there are no exceptions to the statute except those made in and by the statute itself.
In Butler v. Craig, 27 Miss. 628, 61 Am.Dec. 527 (1854), this Court, in answer to a particular argument of the inequity in applying a limitation statute, held:
[B]ut it has long been the settled doctrine of this court, that no equitable exceptions are to be engrafted upon the statutes of limitation, and that where there is not an express exception the court will not engraft one.
In Matson v. Matson, 50 N.M. 155, 173 P.2d 484, 489 (1946), the New Mexico Supreme Court held:
[T]he general principle recognized to-day for the construction of statutes of limitations is that unless some good ground can be found in the statute for restraining or enlarging the meaning of its general words, they must receive a general construction, and that the courts cannot arbitrarily subtract from or add thereto, and cannot create an exception where none exists, even when the exception would be an equitable one.
* * * * * *

*565 As a general rule the courts are without power to read into these statutes exceptions which have not been embodied therein, however reasonable they may seem. It is not for judicial tribunals to extend the law to all cases coming within the reason of it, so long as they are not within the letter.
* * * * * *
The Legislature having made no exception, the courts of justice can make none, as this would be legislating.
See also: Fontana Land Co. v. Laughlin, 199 Cal. 625, 250 P. 669 (1926); Baldwin v. City of San Diego, 195 Cal. App.2d 236, 15 Cal. Rptr. 576 (1961); Oberst v. Mays, 365 P.2d 902 (Colo. 1961); Doughty v. Maine Central Transp. Co., 141 Me. 124, 39 A.2d 758 (1944); Gilliam v. Admiral Corp., 111 N.J. Super. 370, 268 A.2d 338 (1970); Woods v. Phillips Petroleum, 207 Okl. 490, 251 P.2d 505 (1952); Evans v. Finley, 166 Or. 227, 111 P.2d 833 (1941).
The United States Supreme Court has consistently sustained the power of a forum's Legislature to prescribe times in which suits may be brought. Nothing in the Constitution limits this power. M'Cluny v. Silliman, 28 U.S. (3 Pet.) 270, 7 L.Ed. 676 (1830); M'Elmoyle v. Cohen, 38 U.S. (13 Pet.) 312, 10 L.Ed. 177 (1839); Campbell v. Holt, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885); The Michigan Ins. Bank v. Eldred, 130 U.S. 693, 9 S.Ct. 690, 32 L.Ed. 1080 (1889); Burnet v. Alvarez, 226 U.S. 145, 33 S.Ct. 63, 57 L.Ed. 159 (1912); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Chase Securities Corp. v. Donaldson, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945); Wells v. Simonds Abrasive Co., 345 U.S. 514, 73 S.Ct. 856, 97 L.Ed. 211 (1953).
The only restriction placed on states in hearing out-of-state claims is the Constitutional limit placed on our long-arm statute. So long as an out-of-state litigant has enough minimum contacts in Mississippi so that the maintenance of a suit "does not offend the traditional notions of fair play and substantial justice," our courts have the power to hear a suit. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); Administrators of Tulane Educational Fund v. Cooley, 462 So.2d 696 (Miss. 1984). So long as the case falls within the prescribed period of when a suit can be brought, our courts must hear the action.
The Legislature of this State over time has enacted a comprehensive series of acts setting time limits on various types of action, set out in Title 15 Chapter 1 of our 1972 Code. It has also by other statutes provided an extension of one year in case of death, Miss. Code Ann. § 15-1-55. It has provided for tolling in case of:
(1) legal disability (§ 15-1-57,  61);
(2) disability of age or mentality (§ 15-1-59);
(3) absence from state (§ 15-1-63);
(4) fraudulent concealment (§ 15-1-67).
It has passed other statutes making special provisions as to the application of such statutes: Miss. Code Ann. §§ 15-1-73 to -75.
Also, the Legislature has passed a statute making provision for nonresidents bringing suit on causes accruing in another state. Miss. Code Ann. § 15-1-65, which has been on the books since 1880, provides:
[W]hen a cause of action has accrued in some other state or in a foreign country, and by the law of such state or country, or of some other state and country where the defendant has resided before he resided in this state, an action thereon cannot be maintained by reason of lapse of time, then no action thereon shall be maintained in this state.
We have consistently held that this statute applies only to a nonresident who moves to this State after the statute has run on the cause in the other state. It does not apply to the factual situation presented here, and in cases such as this our Mississippi statute of limitations applies. See: White v. Malone Properties, Inc., 494 So.2d 576 (Miss. 1986); Cowan v. Ford Motor Co., 437 So.2d 46 (Miss. 1983); Montgomery v. Yarbrough, 192 Miss. 656, 6 So.2d 305, sugg. of error overruled, 6 So.2d 925 (1942); Louisiana & Mississippi R. Transfer Co. v. *566 Long, 159 Miss. 654, 131 So. 84 (1930); Fisher v. Burk, 123 Miss. 781, 86 So. 300 (1920); New Orleans Great Northern R. Co. v. Fortinberry, 107 Miss. 79, 64 So. 966 (1914); Robinson v. Moore, 76 Miss. 89, 23 So. 631 (1898); Kershaw v. Sterling Drug, Inc., 415 F.2d 1009 (5th Cir.1969); Sheets v. Burman, 322 F.2d 277 (5th Cir.1963). The Legislature, in re-enacting this statute over the years is presumed to have known the construction put on it by this Court and never saw fit to change it. This conclusively demonstrates we have given this statute the precise interpretation the Legislature intended. White v. Williams, 159 Miss. 732, 132 So. 573, 75 A.L.R. 757 (1931).

IV.

COMMON LAW APPLICATION OF STATUTE OF LIMITATIONS
The overwhelming body of common law holds that in applying statutes of limitations, the law of the forum controls. That is, the statute of limitations of the state where suit is filed applies, not the state where the cause accrued.
The rule has been consistently applied by this Court without problem in Hamilton v. Cooper, 1 Miss. (Walker) 542 (1832); Wright v. Morduant, 77 Miss. 537, 27 So. 640 (1899); Louisiana & Mississippi R. Transfer Co. v. Long, supra; Montgomery v. Yarbrough, supra; New Orleans Great Northern R. Co. v. Fortinberry, supra; Gutherie v. Merchants Nat'l Bank of Mobile, 254 Miss. 532, 180 So.2d 309 (1965); and Cowan v. Ford Motor Co., supra.
In Vick v. Cochran, 316 So.2d 242, 246 (Miss. 1975), we stated: "(2) the period of limitations, by ancient precedent, is governed by the law of the forum."[2]
Also, as noted, application of Mississippi law to suits brought in this state has been consistently respected by the federal courts. See: Davis v. Nat'l Gypsum Co., 743 F.2d 1132 (5th Cir.1984); Kershaw v. Sterling Drug, supra; Sheets v. Burman, supra; Fieldman v. Roper Corp., 586 F. Supp. 936 (S.D.Miss. 1984); Price v. Litton Systems, Inc., 607 F. Supp. 30 (S.D. Miss. 1984); Schreiber v. Allis-Chalmers, 448 F. Supp. 1079 (D.Kan. 1978); Steele v. G.D. Searle & Co., 422 F. Supp. 560 (S.D. Miss. 1976); Cummings v. Cowan, 390 F. Supp. 1251 (N.D.Miss. 1975).
While not involving Mississippi cases, the rule is respected and adhered to in decisions of the United States Supreme Court. See Watkins v. Conway, 385 U.S. 188, 87 S.Ct. 357, 17 L.Ed.2d 286 (1966); Wells v. Simonds Abrasive Co., supra; Davis v. Mills, 194 U.S. 451, 24 S.Ct. 692, 48 L.Ed. 1067 (1904).
53 C.J.S. Limitations of Actions, states the general rule. Section 27, pp. 970-72:
[T]he general rule is that in respect of the limitation of actions the law of the forum governs, regardless of where the cause of action arose, or of whether or not the action would be barred in the state in which it arose, and irrespective of the residence of the parties at the time the cause of action accrued.
* * * * * *
The general rule applies wherever foreign statutes bar merely the remedy as distinguished from the right, and has been said to have no exceptions other than those which may be found in the law of the forum.
Section 30, p. 975, gives the one general exception:
Where by statute a right of action is given which did not exist by the common law, and the statute giving the right fix the time within which the right may be enforced, the time so fixed becomes a limitation or condition on such right, and will control, no matter in what forum the action is brought ...
See also: 51 Am.Jur.2d Limitations of Actions, §§ 66, 68.
In addition the following states hold that the forum applies its own statute of limitations:
Alabama

Dodd v. Lovett, 287 Ala. 131, 248 So.2d 724 (1971).

*567 Alaska

Alaska Airlines, Inc. v. Lockheed Aircraft Corp., 430 F. Supp. 134 (D.Alaska 1977).
Colorado

Casselman v. Denver Tramway Corp., 39 Colo. App. 306, 568 P.2d 84, 86 (1977).
Connecticut

Raymond-Dravo-Langenfelder v. Microdot, Inc., 425 F. Supp. 614, 619 (D.Del. 1976).

Thomas Iron Co. v. Ensign-Bickford Co., 42 A.2d 145, 146 (1945).
Florida

Aviation Credit Corp. v. Batchelor, 190 So.2d 8, 10 (Fla. Dist. Ct. App. 1966), cert. dismissed, sub nom. Batchelor v. Aviation Credit Corp., 198 So.2d 24 (Fla. 1967).
Georgia

Crites v. Delta Airlines, Inc., 177 Ga. App. 723, 341 S.E.2d 264, 265-266 (1986).
Indiana

Lee v. Estate of Cain, 476 N.E.2d 922, 924 (Ind. Ct. App. 1985).
Iowa

Sedco Intern'l, S.A. v. Cory, 522 F. Supp. 254, 315 (S.D.Iowa 1981).

Clark v. Figge, 181 N.W.2d 211, 215 (Iowa 1970).
Maine

Hossler v. Barry, 403 A.2d 762, 766 (Me. 1979).
Maryland

Sokolowski v. Flanzer, 769 F.2d 975, 978 (4th Cir.1985).

Billingsley v. Lincoln Nat'l Bank, 271 Md. 683, 320 A.2d 34 (1974).
Michigan

Fries v. Holland Hitch Co., 12 Mich. App. 178, 162 N.W.2d 672, 674 (1968).
Nevada

Seely v. Illinois-California Express, 541 F. Supp. 1307 (D.Nev. 1982).
Ohio

Loughan v. Firestone Tire & Rubber Co., 624 F.2d 726, 729 (5th Cir.1980).

Lee v. Wright Tool & Forge Co., 48 Ohio App.2d 148, 356 N.E.2d 303, 306 (1975).
Oklahoma

Mitchell v. Cloyes, 620 P.2d 398, 403 (Okla. 1980).
Pennsylvania

Bulkin v. Western Kraft East, Inc., 422 F. Supp. 437, 441 (E.D.Pa. 1976).

Freeman v. Lawton, 353 Pa. 613, 46 A.2d 205 (Pa. 1946).
Texas

Los Angeles Airways, Inc. v. Lummis, 603 S.W.2d 246 (Tex.Civ.App. 1980).
Washington

Sobo v. Sobo, 28 Wash. App. 766, 626 P.2d 520 (1981).
Texas has carried the rule of applying her own statute of limitations to the extent that even though a summary judgment was granted in a foreign state because that state's statute barred the action, nevertheless this did not bar the plaintiff suing in a Texas court. Los Angeles Airways, Inc. v. Lummis, supra. State courts are, and should be chary of relinquishing their right to offer their own state's statute of limitations to causes pending in their courts.
This Court is not unmindful that the application of this rule has received respectable academic criticism. See: Leflar, The New Conflicts-Limitations Act, 35 Mercer L.Rev. 461 (1984); Lorenzen, The Statute of Limitations and the Conflict of Laws, 28 Yale L.J. 492 (1919); Martin, Statutes of Limitations and Rationality in the Conflict of Laws, 19 Wash.L.J. 403; and Grossman, Statutes of Limitations and the Conflict of Laws: Modern Analysis, 1980 Ariz.St.L.J. 1. Even they are not unanimous, however. See: Ailes, Limitation of Actions and the Conflict of Laws, 31 Mich.L.Rev. 474 (1933).
Also, the comments under Restatement (Second) of Conflict of Laws (1971), § 142 (amended 1987) recommend a contrary holding. As the Restatement acknowledges, however, this question can be easily addressed by a legislature, and cites the Uniform Conflict of Laws-Limitations Act, which was approved by the National Conference *568 of Commissioners on Uniform Laws in 1982.[3] This, of course, is where the question should be addressed, not through any back-handed legislation from this Court.
What time limitations should be imposed on litigants filing suit in courts of this state embraces broad matters of public policy, which clearly are matters for the Legislature to decide, as indeed they have throughout history.
We have clearly established, sound principles of law which we are not inclined to overrule. White v. Malone Properties, supra, and Cowan v. Ford Motor Co., supra.
REVERSED AND REMANDED.
DAN M. LEE, P.J., and SULLIVAN, GRIFFIN and ZUCCARO, JJ., concur.
ROBERTSON, J., dissents with written opinion joined by PRATHER and ANDERSON, JJ.
ANDERSON, J., dissents with written opinion joined by ROY NOBLE LEE, C.J., and ROBERTSON, J.
ROBERTSON, Justice, dissenting:

I.
As a matter of common sense, the suit brought this day by Nevin and Anna Mae Shewbrooks ought to fail, for what the Shewbrooks have done is forum shop their time barred claims into the courts of this state, a state with no discernible interest in either the parties or the matter complained of.
This is a Delaware case. Perhaps it could have been brought in Pennsylvania or New Jersey. Nevin Shewbrooks has contracted asbestosis through exposure to asbestos-related products during the course of some twenty-five years of employment in facilities located variously in the states of Delaware, Pennsylvania, and New Jersey. The problem is that the Shewbrooks have slept through the expiration of the wholly applicable two year statute of limitations of those three states. They are here because of our catchall six year statute, Miss. Code Ann. § 15-1-49 (1972), which was never meant to be a torts statute but has become one, and because they have secured the services of inventive counsel.
Our course would be jurisprudentially more sound if we employed our familiar center of gravity/choice of law rules to hold that the application limitations period is that furnished by the state of most significant relationship to the occurrence and the parties. That state is Delaware, or perhaps Pennsylvania or New Jersey. It is certainly not Mississippi.
I would hold that the action lies within the subject matter jurisdiction of the Circuit Court of Hinds County, that those parties who have agents for process here are subject to the in personam jurisdiction of that court,[1] and that, inconvenience aside, venue lies there. I would affirm the Circuit Court by crediting the choice of law/statute of limitations defense collectively asserted by Defendants.

II.
On April 22, 1982, Nevin and Anna Mae Shewbrooks, residents of Delaware, filed a products liability action in Delaware state court. There Nevin sought recovery for asbestosis, while Anna Mae claimed loss of consortium as a result of Nevin's illness. Named as Defendants were a number of manufacturers of asbestos related products. The Delaware court dismissed the claim as being barred by the applicable statute of limitations. Subsequently, the Shewbrooks filed another claim in Delaware state court, wherein Anna Mae sought recovery for asbestosis and Nevin claimed loss of consortium as a result of Anna Mae's illness. At the time of the *569 instant appeal, the second action was still pending in Delaware.
On March 23, 1984, the Shewbrooks commenced the present civil action, another products liability suit, this time in the Circuit Court for the First Judicial District of Hinds County, Mississippi. The Shewbrooks asserted the same claims as in both of their Delaware lawsuits. Of the eighteen defendants named here, sixteen allegedly manufactured asbestos products and two were allegedly owners of various facilities where Nevin Shewbrooks worked. And, of these eighteen defendants, eleven are not qualified to do business in Mississippi,[2] while the rest are.
The Shewbrooks allege that Nevin contracted asbestosis as a result of working with asbestos products either manufactured or distributed by the various defendants. Nevin alleges that he contracted this disease over a twenty-five year period while working in Delaware, New Jersey and Pennsylvania. Nevin and Anna Mae have never resided in Mississippi, never worked in Mississippi, and have never been exposed to any asbestos products in Mississippi. Suffice it to say that nothing in the record indicates that Nevin and Anna Mae have had any contact with Mississippi whatsoever.
Seventeen of the defendants moved to dismiss the claim based on various grounds including lack of personal jurisdiction, forum non conveniens and statute of limitations, to-wit: the Mississippi "borrowing statute." Miss. Code Ann. § 15-1-65 (1972). The Circuit Court heard the matter on June 1, 1984, on the grounds that "this court does not have personal jurisdiction of the parties and further ... the cause should be dismissed on the basis of forum non conveniens." Consequently, the Shewbrooks bring this appeal.

III.

A.
Forum shopping has long been perceived one of the unfortunate by-products of our federal and multi-state legal system. The mobility of today's society and the interstate complexities of American enterprise exacerbate the situation. An increasing percentage of actions filed are within the competence of multiple venues. There is force in the notion that the outcome of these actions should turn upon factors other than the geographical situs of the courthouse.
Over the past half-century our law has landed two knock down punches upon the face of its forum shopping foe. In the federal-state choice of law setting Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and progeny have established that substantive law governing federal diversity actions shall be the same as would have been enforced had the case been heard in state court. In 1969 the American Law Institute formally adopted the Restatement (Second) of Conflicts of Laws (1968) which set forth the center of gravity test for resolution of state to state conflicts questions.
Beginning with Craig v. Columbus Compress & Warehouse Co., 210 So.2d 645, 649 (Miss. 1968) (contracts) and Mitchell v. Craft, 211 So.2d 509, 512 (Miss. 1968) (torts), this state has embraced the center of gravity approach to conflicts questions. In those cases we held that an action will ordinarily be determined by reference to the law of the state of most significant relationship to the occurrence and the parties. Since 1968 we have refined and applied the test in a variety of factual and legal contexts. McNeal v. Administrator of Estate of McNeal, 254 So.2d 521, 524-25 (Miss. 1971); Fells v. Bowman, 274 So.2d 109, 112-13 (Miss. 1973); Dunavant Enterprises, Inc. v. Ford, 294 So.2d 788, 791-92 (Miss. 1974); Vick v. Cochran, 316 So.2d 242, 245-48 (Miss. 1975); Spragins v. Louise Plantation, Inc., 391 So.2d 97, 99-101 (Miss. 1980); Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 457-48 (Miss. 1983); Boardman v. United Services Automobile Association, 470 So.2d 1024, 1030-39 (Miss. 1985); Kountouris v. Varvaris, 476 So.2d 599, 605-07 (Miss. 1985); *570 White v. Malone Properties, Inc., 494 So.2d 576, 578 (Miss. 1986).
We sought justice on a number of fronts by adopting the center of gravity doctrine. One such goal is being realized in context of the fact that most other states have adopted center of gravity, assuring, to the maximum extent feasible, that the law governing adjudication of the merits of the claim litigated is the same without regard to what state the case may be tried in, all to the end that forum shopping may be deterred. Compare, e.g., Heavner v. Uniroyal, Inc., 63 N.J. 130, 305 A.2d 412, 418 (1973).
Two caveats need be noted. First, the center of gravity test is not one that may yield results with mathematical precision. Realism replaces formalism as we identify the interests that ought to be relevant to a neutrally just resolution of the choice of law question and, when all do not direct a like result, we engage in the now familiar balancing process to determine just what state has the most significant relationship with the occurrence and the parties. Second, we entertain no illusion that the center of gravity test attacks effectively all of the vagaries of forum shopping. A number of factors routinely considered by experienced counsel remain untouched  from rules governing the trial process to the perceived prejudices of local judges and juries.
Then there is the matter of our borrowing statute, Miss. Code Ann. § 15-1-65 (1972), which provides
When a cause of action has accrued in some other state or in a foreign country, and by the law of such state or country, or of some other state and country where the defendant has resided before he resided in this state, an action thereon cannot be maintained by reason of lapse of time, then no action thereon shall be maintained in this state.
To be sure, this statute by its terms does not control this case. Section 15-1-65 "is concerned only with non-resident defendants who may move to Mississippi after the accrual of an action against them in the state or country of their former residence." White v. Malone Properties, Inc., 494 So.2d 576, 579 (Miss. 1986). None of today's non-resident defendants has moved to Mississippi.
What is important for the moment is that this statute implies the existence of a deeper principle of law that, where there has been brought in this state an action that ought to be governed by the law of another state, the viability of any limitations defense should also be adjudged by reference to the law of that other state.

B.
I find the Court today confronted with a case of first impression. We have never decided a choice of law/limitations issue on facts quite like these. There are two sources of law possessing great power. The first is our center of gravity doctrine adopted in 1968 in Craig and Mitchell and followed in at least nine cases since that time. The second is Section 15-1-65. Employing accepted stratagems of legal reasoning which I have described elsewhere, see Cuevas v. Royal d'Iberville Hotel, 498 So.2d 346, 357-58 (Miss. 1986) (dissenting opinion); J.L. Teel, Inc. v. Houston United Sales, Inc., 491 So.2d 851, 857-58 (Miss. 1986), the content of the rule that ought govern today becomes readily apparent.
Our center of gravity doctrine should be further refined so that, in cases not expressly controlled by Section 15-1-65, it would provide something like this: The question whether an action may be maintained against a statute of limitations defense will ordinarily be determined by reference to the occurrence and the parties. This will ordinarily be the state which furnishes the center of gravity under Craig and Mitchell and progeny. This is the sort of test which, if adopted universally, would be likely to produce consistent results regardless of the forum, in the sense that I would ordinarily expect that Delaware or New Jersey would identify as the state of most significant relationship in the same state as we would. See, e.g., Heavner v. Uniroyal, Inc., 305 A.2d 412, 418 (N.J. 1973); Seals v. Langston Co., 206 N.J. Super. 408, 502 A.2d 1185, 1186 (1986), cert. den. 517 A.2d 392. This is the same approach *571 we have employed successfully in interstate child custody controversies. See, e.g., Siegel v. Alexander, 477 So.2d 1345, 1346-47 (Miss. 1985); Walker v. Luckey, 474 So.2d 608, 611-12 (Miss. 1985).
Under this test I would have our choice of law rules mandate that an action brought in this state be dismissed if it is barred under the applicable statute of limitations of the state of most significant relationship to the occurrence and the parties. As I understand the facts of the case at bar, that state probably is Delaware. The only competitors appear to be Pennsylvania and New Jersey. As each of these two states brought a two year statute of limitations applicable to cases such as this, we need not decide among the three. Suffice it to say that Mississippi has no significant relationship to either the occurrence or the parties, much less the most significant relationship.
Perhaps there is a sense in which statutes of limitations may be not wholly identical in function with what are commonly called substantive rules of law. I feel unease at the suggestion that we automatically employ conventional choice of law balancing in all limitations conflicts cases. If it could be demonstrated that Mississippi had some substantial interest in the adjudication of this controversy, I might take a different view. If it could be shown that there was present some compelling consideration of remedial justice, I might be more open minded to the Shewbrooks' claim. All we have here are plaintiffs who slept on their rights in the states where they should have brought their action. The fortuitous circumstances that Mississippi has a six year statute of limitations and that the defendants do unrelated business here and that some have designated agents to receive services of process here do not seem enough to take the case out of the general rule.

C.
Much of what ought carry the day I have said in my concurring opinion in White v. Malone Properties, Inc., 494 So.2d 576, 579-83 (Miss. 1986). In White, I supported my view with substantial authority from other jurisdictions[3] and with scholarly publications and, as well, articulated as best I could the fallacies in the contrary view. There is no reason to repeat those points here. For the moment I am buoyed in my confidence in the correctness of the views I stated in White by the imminence of the American Law Institute's approval of proposed revisions of Restatement (Second) of Conflicts of Laws, § 142 (1986 Revisions; Supp. April 12, 1988). Suffice it to say that proposed Restatement § 142 and the comments[4] appended thereto comport nicely with my White opinion.
*572 White was a suit by an injured construction worker brought against his employer. The accident occurred near New Orleans, Louisiana, at a time when Plaintiff White was a resident citizen of Louisiana. Defendant Malone, however, was a Mississippi corporation doing business in Louisiana. And, before he filed suit, Plaintiff White had moved to Mississippi. The suit quite arguably was barred under the exclusiveness of liability section of either the Louisiana or the Mississippi Workers' Compensation Act, whichever applied. Beyond that a choice of law statute of limitations question was presented. Louisiana had a two year statute. The Mississippi statute was six years. The accident occurred on June 20, 1977. White brought his suit in Mississippi on September 16, 1982  some five years, 88 days after his accident.
In White, I thought it clear that Louisiana was the state of the most significant relationship to the occurrence and the parties, the state of the center of gravity, if you will. This Court should there have employed its choice of law rules to decree the action barred by the Louisiana two year statute of limitations. The point for the moment is that Mississippi has far less reason to be interested in today's case than White. At least in White the defendant was a Mississippi-domiciled corporation and the plaintiff had moved to Mississippi after the accident. Here we are advised that the Shewbrooks have never so much as set foot in the state of Mississippi. None of the *573 defendant corporations are domiciled here, although some have qualified to do business here and have agents for process while others are doing unrelated business here. In sum, what I said in my separate opinion in White applies with even greater force in the case at bar, and to the end that this action should be finally dismissed on the basis of the defendant's collective choice of law/statute of limitations defenses.

IV.
I prefer the choice of law/limitations basis for deciding today's case for several reasons, reasons over and above the obvious credibility of the legal reasoning available there, for I consider the legal reasoning leading to the forum non conveniens dismissal as well correct. First, the choice of law/limitations thesis I have advanced here and in White represents the modern trend in this area of the law. Suffice it to note the authorities cited in my opinion in White and the recent work of the American Law Institute mentioned above. The transparency of the old statutes-of-limitations-are-procedural school of thought has developed to the point where reopaquing is beyond the power of the obscurant. While I regard Justice Anderson's forum non conveniens analysis sound, and for that reason join it, candor requires admission that there is respectable authority in other jurisdictions to the contrary.
Second, I consider choice of law/limitations to afford a better stratagem for handling similar cases in the future. Conceptually, we are concerned with two separate and distinct juridical inquiries:[5] venue and choice of law. Forum non conveniens concerns the convenience of the parties regarding the trial of the case. Where do the parties and the witnesses live? Conceivably, the Shewbrooks could have moved to Mississippi after Nevin contracted asbestosis and been treated by Mississippi physicians who would have become potential damages witnesses. Those facts could alter significantly the forum non conveniens analysis, but it would not change the fact that Mississippi is not the state of center of gravity/most significant relationship. In short, I consider that the choice of law/limitations theory I urge will produce a just and efficient result in a greater number of cases than will forum non conveniens. The choice of law/limitations glove affords a better fit.
Finally, there is something to be said for the idea that the case is here and our courts ought to decide it. The Shewbrooks' complaint asserts claims within the subject matter jurisdiction of any circuit court in this state. The Circuit Court of Hinds County has had its jurisdiction invoked by the filing of the complaint. All parties have been subjected to the personal jurisdiction of the Circuit Court. The assorted Rule 12(b)(2) motions filed by the various defendants should have been denied.
In this setting, I cannot say I feel no sting from the charge that we ought go forward and adjudge the case. I think we should, though jurisdiction imports authority of judicial competence regarding a matter, a concept rather neutral in its application and effect. We ought go ahead and bring this litigation to a final judgment. That process, of course, involves finding the facts, identifying the content of the appropriate rules of law and than applying those rules to the facts. Boardman v. United Services Automobile Association, 470 So.2d 1024, 1029 (Miss. 1985). Each of the Defendants has pleaded limitations as an affirmative defense. See Rule 8(c), Miss.R.Civ.P.
The electromagnetic force emanating from Craig, Mitchell, and progeny, and as well from Section 15-1-65, forcefully generates a rule of law that an action brought in this state be held time barred if it is time barred under the law of the state of most significant relationship to the occurrence and the parties, and absent a substantial Mississippi interest in the maintenance of *574 the action and absent compelling considerations of remedial justice. As explained above, that rule when applied to the facts of this case yields a judgment for the defendants.
These things said, I am of the view that the judgment of the Circuit Court should be affirmed.
PRATHER and ANDERSON, JJ., concur.
ANDERSON, Justice, dissenting:
With great respect for my colleagues of today's majority, I dissent. It is not just that we have obligated our courts to decide this particular controversy in spite of the fact that no sane person could imagine that it has any relation to our state. One such incident could be borne, albeit with some grumbling. The greater evil is that the present litigants are but the scouts for the plague of locusts that will inevitably descend upon us in response to today's engraved invitation. We have doomed Mississippi to become a dumping ground for the nation's homeless tort litigation.
If there was ever a case that did not belong in a Mississippi court, this is surely it. The plaintiffs are residents of Delaware; it is not clear from the record that either of them has ever so much as entered Mississippi. The numerous co-defendants are all foreign corporations; none has its principal place of business in Mississippi. The cause of action arises from injuries sustained on the other side of the continent. In short, we have a controversy that has about as much to do with Mississippi as does a feud between two nomadic tribes in the Gobi Desert. Yet, in defiance of all sense, it must now be tried here.
It didn't have to be this way. There were ways to avoid placing such burdens on the shoulders of our long-suffering trial judges. Our predecessors closed off one avenue when they virtually read our borrowing statute, Mississippi Code Annotated, Section 15-1-65 (1972) out of the law books. I do not propose to dwell on this statute, which is discussed at length in Justice Robertson's opinion, rather, I will talk about the promising babe we are strangling in its cradle. Discretionary use of forum non conveniens to dismiss inappropriate litigation, even though the dismissal means the action will be entirely lost, is indeed an innovation. But it is neither unprecedented nor unsupported by sound reasons of policy.
I agree with the majority that there are no constitutional or statutory obstacles to the exercise of in personam jurisdiction over these parties in Mississippi's courts. Nor do I object to the general principal that where a court has jurisdiction, it ought not ordinarily to decline it. But I think the majority has given this principle far too broad a reading. A court may, in its sound discretion, decline to exercise its jurisdiction for weighty reasons. E.g., Jones v. Jones, 54 Wis.2d 41, 194 N.W.2d 627, 6530 (1972). It has been held that in actions by a foreign plaintiff against a foreign corporation on a foreign cause of action, a court need not assert its jurisdiction, even where there is no dispute about it. 21 C.J.S. Courts, § 77b. See also, e.g., Atchison, Topeka & Santa Fe Rwy. Co. v. Dist. Court of Creek County, 298 P.2d 427, 430 (Okla. 1956) (trial court is entitled to "stop the wholesale and indiscriminate importation of foreign cases.")
I am of the opinion that the dismissal of the present action for forum non conveniens was made for compelling reasons and that we should hold it within the trial judge's sound discretion. We should bear in mind that where forum non conveniens is involved, the ruling of the trial judge is entitled to "substantial deference," Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257, 102 S.Ct. 252, 256, 70 L.Ed.2d 419, 436 (1981), as opposed to the cavalier second-guessing the trial judge has received from us today. I am also persuaded that it is bad federalism to make the exercise of that discretion depend absolutely on the legal status of the cause in other states. There is no natural law of forum non conveniens, nor are the decisions of the courts of our sister states or of the United States binding upon us as to state law questions, though we may, of course, follow them if we find them persuasive. Each state of *575 the Union is competent to chart the boundaries of its common-law doctrines, subject only to the provisions of the state and federal constitutions. To decide whether Mississippi will have a doctrine of forum non conveniens and to declare what that doctrine will contain, are the prerogatives of this Court and this Court alone.
I can see no constitutional barriers to the dismissal of the present action. Article 3, § 24, of the Mississippi Constitution (1890) relied upon by the majority, is a general statement of policy and principle. I know of no case standing for the absurd proposition that it disables the state from setting reasonable standards for the operation of its courts.
Nor do I believe that the Privileges and Immunities Clause (Art. IV, § 2) of the U.S. Constitution is a bar to the dismissal. For one thing, the citizenship of the Shewbrooks was but one of the reasons for dismissal. Furthermore, under the majority view, any state borrowing statute would be unconstitutional as applied to a plaintiff whose home state had a shorter statute of limitations than the forum state. After all, such a statute would give state residents the right to sue on a cause of action not available to the non-resident plaintiff. But the Supreme Court has explicitly rejected that argument, holding that such statutes do not contravene the Privileges and Immunities Clause. Canadian Northern RR Co. v. Eggen, 252 U.S. 553, 40 S.Ct. 402, 64 L.Ed. 713 (1920).
But the principal reason urged against allowing forum non conveniens here is the so-called alternate forum requirement. A large majority of courts have held that a suit may not be dismissed for forum non conveniens unless it can be actually tried in some other forum. The array of cases cited by the majority is very impressive except to those who believe that cases should be weighed as well as counted. The alternate-forum doctrine seems to be a holdover from the halcyon days of Pennoyer v. Neff, 95 U.S. (5 Otto) 714, 24 L.Ed. 565 (1877), when territorial constraints on in personam jurisdiction made it unnecessary for judges to seek out other expedients for screening out inappropriate foreign actions. It appears that some courts still cling to doctrine though the conditions under which it made sense are long gone. But "modification implies growth. It is the life of the law." Washington v. W.C. Dawson & Co., 264 U.S. 219, 236, 44 S.Ct. 302, 308, 68 L.Ed. 646, 656 (1924) (Brandeis, J.)
Moreover, the doctrine rests on the tacit premise that if a plaintiff allows his action to die in his own state, Mississippi has a positive duty to resuscitate it for him. I know of no such duty, nor can I perceive any sound reasons for declaring it. On the contrary, I think it is high time somebody stood up and made some comments on the emperor's wardrobe. Now I find that at least one of our trial judges has done just that, and been knocked on the head for his trouble.
I would not hesitate to take this position even if I thought myself alone. Such is not the case. One of the nation's premier courts has led the way. The issue has been perceptively discussed by the New York Court of Appeals in Islamic Republic of Iran v. Pahlavi, 62 N.Y.2d 474, 467 N.E.2d 245, 478 N.Y.S.2d 597 (1984) cert. den. 469 U.S. 1108, 105 S.Ct. 783, 83 L.Ed.2d 778 (1985). The New York court began from the sound premise that
our courts are not required to add to their financial and administrative burdens by entertaining litigation which does not have any connection with this State.
62 N.Y.2d at 478, 467 N.E.2d at 247, 478 N.Y.S.2d at 599. Islamic Republic holds forum non conveniens a discretionary doctrine applied "after considering and balancing the various competing factors."
Among the factors to be considered are the burden on the New York courts, the potential hardship to the defendant, the unavailability of an alternative forum in which the plaintiff may bring suit [citations omitted]. The court may consider that both parties to the action are non-residents [citation omitted] and that the transaction out of which the cause of action arose occurred primarily in a foreign *576 jurisdiction. [citation omitted] No one factor is controlling. (Emphasis added).
62 N.Y.2d at 479, 467 N.E.2d at 248, 478 N.Y.S.2d at 600. The New York Court then moved to a specific consideration of the alternative forum requirement, accenting its point by the fact that in the case before it, the plaintiff, as a practical matter, had available no alternative forum. The Court described the availability of an alternative forum as "a most important factor" but added "we have never held that it was a prerequisite for applying the conveniens doctrine." [emphasis in original]. 62 N.Y.2d at 481, 467 N.E.2d at 249, 478 N.Y.S.2d at 601. The Court observed that the idea that availability of an alternative forum was a firm precondition to forum non conveniens dismissal found its original in dicta in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055, 1061 (1947). The Gilbert statement is labeled dicta because in that case the plaintiff clearly had an alternative forum. 62 N.Y.2d at 480, 467 N.E.2d at 248-249.
In the end Islamic Republic holds:
In sum, the record does not demonstrate a substantial nexus between this state and plaintiff's cause of the action. That being so the courts below could, in the exercise of their discretion, dismiss the action on grounds of forum non conveniens notwithstanding the fact that the record does not establish an alternative forum where the action may be maintained and they could do so without conditioning their dismissal on defendant's acceptance of process in another jurisdiction. 62 N.Y.2d at 483-84, 467 N.E.2d at 250, 478 NYS 2d 602.
The majority's attempt to distinguish Islamic Republic from the present case is unconvincing. For one thing, the majority seem to have forgotten their own premise. If, as they contend, lack of an alternate forum were an absolute bar to the use of forum non conveniens, it would be unnecessary to enumerate the circumstances that made the Islamic Republic plaintiffs so repulsive. By listing all of the factors, the court underscored what it had said earlier: they were all factors to be considered in a balancing test. "No one factor is controlling."
The majority also alleges:
1. That the case involved only foreign nationals and that the Privileges and Immunities Clause was not implicated. As discussed above, it was not implicated in our case either.
2. That the New York courts doubted their ability to give complete relief. A factor weighing against forum non conveniens, but not in itself decisive.
3. That if the plaintiffs could not get relief in an Iranian court, it was their own fault. And who was responsible for the running of the statutes of limitation in our case?
4. That Islamic Republic involved no statute of limitations. True, but of little evident weight.
In fact, New York had more of an interest in Islamic Republic than we have in the Shewbrooks' action. The Shah's family, although aliens, were at least residing in the state. Presumably, some of the property they absconded with was there also.
Nor is it true that McLeod v. Lovelace, 117 A.D.2d 989, 499 N.Y.S.2d 290 (1986) shows that the rule of Islamic Republic would not be applied in the present case. The controversy in McLeod had at least some connection with New York; the cause of action accrued there, and (presumably) the substantive law of New York would have controlled the action. Since New York did have an interest in McLeod, it was natural for it to attach more stringent conditions to the sacrifice of its jurisdiction.
I believe we should hold that the requirements of forum non conveniens are satisfied if there is another forum in which the defendants are amenable to process. Gulf Oil Co. v. Gilbert, supra, 330 U.S. at 507, 62 S.Ct. at 842, 91 L.Ed. at 1061. Forum non conveniens, like other rules of law, contemplates equal fairness to both plaintiffs and defendants. It is not fair to a defendant to make him give up defenses *577 available to him in the state of origin in order to obtain a forum non conveniens dismissal here.
There is a difference between keeping the courthouse doors open and making yourself the doormat. Thanks to today's decision, our trial judges are about to learn that distinction  the hard way.
ROY NOBLE LEE, C.J., and ROBERTSON, J., join this dissent.
NOTES
[1] The corporate defendants are: A.C. and S. Inc., a/k/a Acands, Inc., and formerly known as Armstrong Contracting and Supply Corporation; Amoco Chemicals Corporation; Armstrong World Industries, Inc., formerly known as Armstrong Cork Company; Atlas Turner, Ltd; Bell Asbestos Mines, Ltd.; The Celotex Corporation, successor-in-interest to The Philip Carey Manufacturing Company, Philip Carey Corporation, Briggs Manufacturing, and Panacon Corporation; Eagle-Picher Industries, Inc.; E.I. DuPont de Nemours & Company, Inc.; Fibreboard Corporation; Forty-Eight Insulations, Inc.; Gale Corporation; Keene Corporation; Pittsburgh Corning Corporation; GAF Corporation, successor-in-interest to Ruberoid Corporation; Southern Textile Corporation, formerly known as Southern Asbestos, a wholly-owned subsidiary of H.K. Porter Company, Inc.; Nicolet, Inc.; and Owens-Illinois, Inc.
[2] Indeed it is ancient, in this country as well as England. See: Campbell v. Stein, 6 Dow. 116 at 134, 3 Eng.Rpr. 1417 (1818); M'Elmoyle v. Cohen, 13 Pet. (38 U.S.) 312, 10 L.Ed. 177 (1839).
[3] This Uniform Act has been enacted by four states, Arkansas, Colorado, North Dakota and Washington. A copy is made an appendix to this opinion.
[1] I consider that there is a serious question  unanswered by the majority  regarding in personam jurisdiction over those non-resident defendants that have not done, or qualified to do, business in this state.
[2] See footnote 1, supra.
[3] See also Allen v. Volkswagen of America, Inc., 555 F.2d 361 (3d Cir.1977); Henry v. Richardson-Merrell, Inc., 508 F.2d 28 (3d Cir.1975); Farrier v. May Department Stores, Inc., 357 F. Supp. 190 (D.D.C. 1973); and particularly Ferens v. Deere & Co., 819 F.2d 423 (3d Cir.1987) (holding application of the six year Mississippi statute of limitations a violation of defendants' rights secured by due process and full faith and credit clauses of the U.S. Constitution).
[4] Comment g. to proposed Restatement § 142 bears quotation in full.

As stated in Comment e, the earlier view was that statutes of limitations should usually be characterized as procedural. Accordingly, a claim would be maintained, subject to one exception, if it was not barred by the statute of limitations of the forum even though it would be barred by the statute of limitations of the alternate forum. This exception, as stated in Comment e, covered the relatively rare situation where the forum would characterize as substantive a statute of the alternative forum on the ground that the statute was deemed to bar the right and not merely the remedy. In such circumstances, the forum would not entertain an action that was barred by the statute of limitations of the latter state. It was for the forum court to determine whether a foreign statute of limitations barred the right and not merely the remedy. The almost invariable prerequisite was that the liability sought to be enforced was created by statute. Once this requirement had been met, the usual test was whether, in the opinion of the forum, the limitation provision was directed to the right "so specifically as to warrant saying that it qualified the right." Davis v. Mills, 194 U.S. 451, 454 [24 S.Ct. 692, 694, 48 L.Ed. 1067] (1904). Other tests were at times employed, such as whether the statute of limitations had attributes in the state of its enactment which the forum would characterize as substantive; for example, that the defense could be raised even though not pleaded or that the obligation could not be revived after the statutory period had elapsed. Situations where a statute of limitations was held to bar the right were most commonly those where the statute created a right of action and also contained a provision limiting the time in which a suit to enforce the right of action could be brought. Wrongful death statutes were typically statutes of this sort.
The view that statutes of limitations should ordinarily be characterized as procedural has been abandoned in many recent decisions. Under these decisions, the question whether a statute bars the right and not merely the remedy has lost its significance. The forum will no longer entertain a claim with which it has otherwise no contact simply because the action is not barred by its own statute of limitations. Entertainment of the claim under such circumstances would disserve the forum's general policy against the prosecution of stale claims and would not serve any other forum interest. Likewise, entertainment of the claim would frustrate the policy of all other states having a substantial interest in the case and under whose statute of limitations the action would be barred.
The view that the forum would entertain a claim that was not barred by its own statute of limitations, even though the forum had no other contact with the case, could lead on occasion to egregious examples of forum shopping. See, e.g., Keeton v. Hustler, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); Cowan v. Ford Motor Co., 694 F.2d 104 (5th Cir.1982); 713 F.2d 100 (5th Cir. 1983); 719 F.2d 785 (5th Cir.1983). [Note: Cowan is a "Mississippi case" brought in federal court via diversity of citizenship jurisdiction.]
* * * * * *
Decision becomes difficult in situations where, although the forum is not the state of most significant relationship to important issues in the case, some forum interest would be served by entertainment of the claim, but this would be at the expense of the interests of another state which has a closer connection with the case and under whose statute of limitations the claim would be barred. One such situation is where the domicil of the plaintiff is in the state of the forum and that of the defendant is in the other state with the most significant relationship to important issues in the case. In such a situation, the forum should only entertain the claim in extreme and unusual circumstances.
Turning to the other extreme, the forum should not entertain a claim when doing so would not advance any local interest and would frustrate the policy of a state with a closer connection with the case and whose statute of limitations would bar the claim. Thus, the claim should not be entertained when the state of the forum has only a slight contact with the case and the parties are both domiciled in the alternative forum under whose statute of limitations the claim would be barred. Similarly, the claim should not be entertained when the forum has no contact with the case and the parties except that the defendant does unrelated business in the state and has designated an agent to receive service of process there. [Emphasis supplied.]
Speaking generally, a claim that is not barred by the local statute of limitations should not be entertained if no interest of the forum state would be served by entertaining the claim. The claim would be barred by the statute of limitations of the alternative forum. Entertainment of the claim under such circumstances would add to the burden on the local courts and bring no countervailing advantage. This will be so even in situations where entertainment of the claim would not be adverse to the interests of the other states.
[5] Indeed, there is a third that should be mentioned: personal jurisdiction. The three are similar. They overlap. Many lawyers and jurists confuse them. Yet I regard the failure to keep them distinct the source of mischief. See Boardman v. United Services Automobile Association, 470 So.2d 1024, 1035 (Miss. 1985).